The TEXAS DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION and The Austin State Hospital, Appellants,

v.

Donald McCLAIN, Individually, and as Executor of the Estate of Leta Rue Beets McClain, and Paulette McClain Boleyn, Individually, and also Heir of the Estate of Leta Rue Beets McClain, Appellees.

No. 03–96–00015–CV.

Court of Appeals of Texas, Austin.

June 12, 1997.

Rehearing Overruled July 24, 1997.

Dan Morales, Attorney General, John P. Giberson, Assistant Attorney General, Tort Litigation Division, Austin, for Appellants.

Steve Gibbins, Gibbins, Winckler & Harvey, L.L.P., Austin, for Appellees.

Before POWERS, JONES and KIDD, JJ.

KIDD, Justice.

Appellants Texas Department of Mental Health and Mental Retardation and the Austin State Hospital challenge a trial court judgment rendering damages in favor of appellees Donald McClain and Paulette McClain Boleyn, heirs of Leta McClain. We will affirm the trial court judgment.

## THE DISPUTE

Leta McClain had been involuntarily confined to Austin State Hospital since April 1986. On March 29, 1991, McClain was physically assaulted. The assault was most likely committed by a fellow patient, Roger Pugh. Pugh assaulted her with either a metal rod removed from a hospital locker or a metal foot pedal removed from his wheelchair. McClain suffered severe head injuries from the beating, and, on July 6, 1991, died as a result of those injuries.

McClain's heirs brought suit under Texas Civil Practice and Remedies Code section 101.021, alleging that she had died as a result of the use or misuse of tangible personal property for which the state was liable. Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (West 1986). A jury found in favor of the heirs on the issues of Austin State Hospital's use or misuse of the metal rod, the metal foot pedal, and the lithium which had been prescribed to control Pugh's aggressive behavior. The trial court rendered judgment on the jury verdict. Appellants challenge the judgment by five points of error.

## ANALYSIS

## I.

Texas Civil Practice and Remedies Code section 101.021 waives sovereign immunity in certain situations. Under it, a governmental unit is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

    (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

    (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem.Code § 101.021 (West 1986). At issue in this case is the application of 101.021(2), which waives sovereign immunity when death is caused by a condition or use of tangible personal property.

McClain and Pugh were both patients on the medical unit floor of Austin State Hospital. The medical unit floor housed patients who required both medical care and psychiatric care. Both McClain and Pugh were wheelchair bound, although Pugh was able to walk short distances. McClain was described as a "frail" seventy-five-year-old at the time of the assault; Pugh was a relatively healthy forty-two-year-old.

Pugh had a long criminal record that included convictions for voluntary manslaughter, assault with a deadly weapon, resisting arrest, and burglary. He also had substance abuse problems. He was diagnosed as a paranoid schizophrenic with antisocial personality disorder.

Pugh's leg had been fractured in an auto-pedestrian accident. He had pins in his leg and was thought to be suffering from osteomyelitis. He was at Winchester Nursing Home before he was moved to Austin State

Hospital. At Winchester Nursing Home, he suffered from suicidal ideation, which he acted out by devising a noose with which he attempted to hang himself. He was also preoccupied with euthanasia, stating that about twenty people at the nursing home "needed to be put to sleep." He refused to take his anti-psychotic medication and was subject to "rage attacks."

Pugh was involuntarily committed to Austin State Hospital on February 20, 1991, because he was found to be a danger to himself or others. He was admitted on February 22, 1991, to the medical unit of the hospital.

Pugh was frustrated, bitter, and angry about his hospitalization. He refused to take his medication, harangued and harassed the staff, and refused to bathe. Progress reports describe Pugh as "very angry and abusive" towards staff and "hostile." Pugh was on "close observation" status from February 22, 1991, through March 18, 1991. "Close observation" status was discontinued on March 19, 1991.

Pugh's negative behavior escalated a few days before the March 29, 1991, incident. He was deprived of smoking privileges, which made him angry. He remarked that the geriatric patients on the floor needed a "date with a coroner."

Twice in the three-hour period before McClain was beaten Pugh threw urine in front of the nurses' station. McClain was seen wheeling herself to the hospital day room, which was across from Pugh's room, at 1:05 p.m. Fifteen minutes later, McClain was found bleeding from lacerations in her scalp. She was taken to Brackenridge Hospital but remained in a coma until her death on July 6, 1991.

The metal rod and the foot pedal were the only possible weapons located. The metal rod was found under the mattress of the room adjoining Pugh's; a rod was missing from a locker in Pugh's room. Austin State Hospital personnel gave the foot pedal to Austin police when they recalled Pugh had repeatedly removed it from his wheel chair and discovered that it appeared to have blood on it. Pugh was the only suspect in the assault.

## II.

By points of error one, two, and five, appellants complain that the trial court erred in rendering judgment for appellees and in submitting a jury question regarding liability for the injuries arising from the use of the rod and foot pedal since neither the rod nor foot pedal had been "used" by a state employee. They argue that section 101.021(2) does not waive sovereign immunity since a state employee did not physically use the rod or foot pedal to assault McClain. Appellants cite *LeLeaux v. Hamshire–Fannett Independent School District*, 835 S.W.2d 49 (Tex.1992), for the proposition that the employee must have physically used the object that caused injury. But the *LeLeaux* court was analyzing the application of section 101.021(1), which waives sovereign immunity for damage caused by the negligence of an employee that *"arises from the operation or use of a motor-driven vehicle or motor-driven equipment."*

In contrast, courts have long held that section 101.021(2) waives immunity for injuries proximately caused when a governmental employee *negligently provides property* that lacks an integral safety component when the lack of the integral component led to the plaintiff's injuries. *Robinson v. Central Texas MHMR Center*, 780 S.W.2d 169 (Tex.1989) (state liable for employee's provision of swimming attire that did not include life preserver because that was use or condition of swimming attire); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297 (Tex.1976) (university liable for providing uniform without knee pad because it was use or condition of tangible property); *Overton Memorial Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex.1975) (negligently providing bed without bed rails is condition or use for which government is liable under Tort Claims Act); *City of Waco v. Hester*, 805 S.W.2d 807 (Tex.App.—Waco 1990, writ denied) (injuries of plaintiff raped by fellow inmate caused by "use" of tangible or real property because jailers "used" day room to house plaintiff with other male inmates); *see also Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex.1996). That

the violent act that ultimately caused McClain's death was undertaken by a third party does not relieve the state from liability for its employees' negligence in allowing psychiatric patients under its control access to items that could be used as weapons. *See Delaney v. University of Houston,* 835 S.W.2d 56, 60 (Tex.1992) (university that failed to repair dormitory door could be liable even though rapist was not university employee).

■ Section 101.021(2) provides that the governmental unit is liable for injuries caused by a use of personal or real property "if the governmental unit would, were it a private person, be liable" under Texas law. No one alleges that a state employee used either the rod or the foot pedal to *beat* McClain. However, state employees certainly either *provided* the rod and the foot pedal to Pugh, or allowed him *access* to them. The rod was part of the lockers provided to patients. Appellants complain that there is no evidence that they owned the wheelchair Pugh used. However, even if the state did not own the wheelchair, both the chair and Pugh were under the state's control. *See City of Denton v. Van Page,* 701 S.W.2d 831, 834–35 (Tex.1986) (city could be liable under Tort Claims Act if it owned or controlled real property, created a dangerous situation, or agreed to make safe a known dangerous situation); *cf. Kassen v. Hatley,* 887 S.W.2d 4 (Tex.1994) (alleged tangible personal property belonged to plaintiff). State employees controlled Pugh's access to the objects used as weapons, just as they controlled the well-being and safety of every patient on the floor.

Further, appellants knew of Pugh's propensity for violence and his criminal record. They also knew that he had recently been agitated and suicidal. He was, in the testimony of Austin State Hospital employees, a difficult, noncompliant patient. He had told staff members, "I could kill you with one blow, and it wouldn't be the first time I've killed." Several workers testified that they were afraid of him, and they were not surprised when the beating occurred. Austin State Hospital employees also knew that Pugh had recently been preoccupied with euthanasia and had remarked that the aged and ill needed "a date with the coroner." The record shows that Pugh had repeatedly removed the foot pedal from his wheel chair. There was also an indication that he had stated that he could use the foot pedal as a weapon.

■ One who has taken charge of a dangerous person has a duty to exercise some measure of reasonable control over that person when there is a "recognizable great danger of harm" to others. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 311 (Tex.1983); Restatement (Second) of Torts § 319 (1965);[1] *see also Kerrville State Hosp.,* 923 S.W.2d at 588 (Abbott, J., dissenting opinion).[2] One may also be liable for the acts of a third person when he or she has superior knowledge of a particular risk that the third person poses. *Golden Spread Council, Inc. v. Akins,* 926 S.W.2d 287, 289–290 (Tex.1996) (council that knew of allegations of sexual molestation had duty to exercise care in recommending person as scoutmaster); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 314 (Tex. 1987) (alcohol beverage licensee owes duty to general public not to serve alcohol to person it knows or should know is intoxicated). A "recognizable great danger of harm" to other patients existed given Pugh's criminal record, penchant for violence, and psychotic behavior, and Austin State Hospital was aware of that danger.

■ Finally, we find it significant that McClain was *involuntarily committed* to the state's care. The state has a duty to exercise reasonable care to prevent a third person

---

**1.** Restatement (Second) of Torts, section 319, provides that:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

Restatement (Second) of Torts § 319 (1965).

**2.** *Cf. Butcher v. Scott,* 906 S.W.2d 14, 15 (Tex. 1995) (landlord who retains control over security and safety of premises owes duty to tenant's employee to use ordinary care to protect employee against unreasonable risk of harm from criminal acts of third parties).

from intentionally harming or creating an unreasonable risk of harm to a person whom it has taken custody of, if it knows or has reason to know that it has the ability to control the conduct of the third person, and knows or should know of the necessity and opportunity for exercising such control. Restatement (Second) of Torts § 320 (1965).[3] The state, having taken custody of both Pugh and McClain, owed McClain a duty to exercise reasonable care to control Pugh's conduct.

Appellants complain that sovereign immunity is not waived whenever a governmental unit simply "owns or controls tangible personal property which is used by a non-employee ... to victimize either the general public or fellow non-employees." The problem is not that the state simply owned the rod or controlled the foot pedal. The problem is that the state knew it had in its custody a person who had been adjudicated as potentially dangerous to himself or to others, knew his violent record, knew that he was preoccupied with euthanasia, and did not take steps to secure objects that could be used as weapons. Testimony proved that both the locker bar and the foot pedal could have been fixed in place. Contrary to the state's assertion, there *is* a direct causal connection between the property supplied by or controlled by the state and the injury that occurred, and the jury so found.

We hold that in this case, lockers with removable metal rods and a wheelchair with a removable metal foot pedal lacked an integral safety component, and appellees' negligent provision of such objects led to McClain's injuries.

Appellants also rely on *Mitchell v. Shepperd Memorial Hospital*, 797 S.W.2d 144 (Tex.App.—Austin 1990, writ denied), and *Harris v. Galveston County*, 799 S.W.2d 766, 768 (Tex.App.—Houston [14th Dist.] 1990, writ denied), to support their argument that a state employee must have physically used the rod or foot pedal to assault McClain. Both *Mitchell* and *Harris* involved plaintiffs seeking to hold a county-owned hospital liable for the alleged negligence of a physician. The cases are distinguishable from this one because in those cases the only issue was whether the injury was caused by the negligent act of an employee or of an independent contractor. Here, the negligent act—providing or allowing access to the rod or foot pedal, one of which was used to bludgeon McClain—was undeniably committed by state employees.

We overrule points of error one, two, and five. And, because the jury finding that McClain's injuries were caused by appellants' provision of the foot pedal or the rod is sufficient to support the jury verdict, we need not address appellants' points of error challenging the jury's finding that Austin State Hospital used or misused lithium while treating Pugh. We affirm the trial court judgment.

---

3. Restatement (Second) of Torts, section 320, provides:

One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor
(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and
(b) knows or should know of the necessity and opportunity for exercising such control.
Restatement (Second) of Torts § 320 (1965).