## UNIVERSITY OF NORTH TEXAS, Appellant,

v.

## Carla HARVEY and Catherine Grace Harvey, Appellees.

### No. 2–02–320–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 29, 2003.

Dissenting to Denial of Reconsideration En Banc Jan. 29, 2004.

used to enhance appellant's September 3, 1996 DWI conviction to a felony.

John Cornyn, Greg Abbott, Atty. Gen. of Texas, Howard G. Baldwin, Jr., First Asst. Atty. Gen., Jeffrey S. Boyd, Deputy Atty. Gen. for Litigation, and Nelly R. Herrera, Chief, Tort Litigation Division, and S. Ronald Keister, Asst. Atty. Gen., Austin, for Appellant.

Randall & Turner, L.L.P., Randall E. Turner, Susan Bleil, Sondrea J. King, Fort Worth, for Appellees.

Panel B: HOLMAN, GARDNER, and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

The University of North Texas (UNT) appeals the denial of its plea to the jurisdiction asserting sovereign immunity. In three issues, UNT contends that the trial court erred by failing to grant UNT's plea to the jurisdiction because Appellees Carla and Catherine Grace Harvey[1] failed to plead a waiver of sovereign immunity under the Texas Tort Claims Act. In a fourth issue, UNT asserts that no waiver of sovereign immunity exists for the Harveys' strict liability claims. We will affirm the trial court's denial of UNT's plea to the jurisdiction on the Harveys' negligence claims concerning the ice barrels. We will reverse the denial of UNT's plea to the jurisdiction on the Harveys' other negligence claims and on the Harveys' strict liability claims and render judgment for UNT on those claims.

Also pending before us is UNT's motion for reconsideration of our denial of its prior motion to strike the Harveys' appendix. UNT alleges that the appendix con-

---

1. Catherine Harvey was a minor, so her mother Carla brought suit on her behalf.

tains deposition testimony not presented to the trial court at the plea to the jurisdiction hearing. We carried UNT's motion for reconsideration with this case, and, in connection with our disposition of this appeal, we will deny it. We have utilized the Harveys' appendix as well as UNT's motion for reconsideration only to clarify the identity of the witnesses whose testimony was presented to the trial court via deposition excerpts at the plea to the jurisdiction hearing. We have not considered jurisdictional evidence that was included in the appendix but not presented to the trial court.

## II. Standard of Review

We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review because subject matter jurisdiction is a question of law. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999). The plaintiff has the burden to plead facts affirmatively showing the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). A plea to the jurisdiction should, however, be decided without delving into the merits of the case. *See County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002). A plea to the jurisdiction does not authorize an inquiry so far into the substance of the claims presented that the plaintiff is required to put on her case simply to establish jurisdiction. *Bland ISD v. Blue,* 34 S.W.3d 547, 554 (Tex.2000).

Instead, in determining whether jurisdiction exists, we look to the allegations in the pleadings, accept them as true, and construe them in favor of the pleader. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446. We must accept the allegations in the petition as true unless the defendant pleads and

proves that the plaintiff fraudulently made the allegations to confer jurisdiction. *See Univ. of Houston v. Elthon,* 9 S.W.3d 351, 355 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.). We also may consider evidence presented to the trial court to resolve the jurisdictional dispute, and we must do so when necessary to resolve the dispute. *See Brown,* 80 S.W.3d at 555; *Bland ISD,* 34 S.W.3d at 554.

UNT attached deposition excerpts to its plea to the jurisdiction, and the Harveys attached evidence and deposition excerpts to their response to UNT's plea to the jurisdiction. Applying a de novo standard of review to the jurisdictional issue, we review the Harveys' pleadings and all of the relevant jurisdictional evidence presented to the trial court to determine whether some evidence supports the Harveys' contention that their claims fall within the Texas Tort Claims Act's statutory waiver of immunity. *See Brown,* 80 S.W.3d at 555–56.

## III. Factual & Procedural Background

Following a high school drill team camp conducted in June 1999 on UNT's campus, fifty-eight campers, including Catherine Harvey, became very ill, suffering nausea, vomiting, and bloody diarrhea. A doctor with the United States Center for Disease Control assigned to investigate the incident, Dr. John T. Brooks, determined that the camp participants had been poisoned by *E. coli* bacteria. Catherine experienced extreme complications from the poisoning, was hospitalized, and almost died.

During the camp, UNT provided ice to the camp participants. UNT obtained the ice from the cafeteria ice-makers, transferred it to open garbage barrels, and placed the barrels in various outside locations. UNT failed to provide scoops to remove the ice from the barrels, and consequently, the campers used their hands,

their cups, and their water bottles to scoop the ice. UNT also provided a salad bar in its cafeteria, and bags of salad greens were often transferred to serving bowls on the salad bar directly from the bags without washing.

Dr. Brooks prepared a report and submitted his findings to state officials before leaving Texas.[2] The report indicates that Dr. Brooks and two other CDC employees interviewed all campers and conducted an epidemiological investigation, an environmental investigation, and a laboratory investigation. Rectal swabs and stool samples obtained from UNT's cafeteria workers failed to reveal the presence of *E. coli.* Likewise, ice obtained from the cafeteria ice-makers did not reveal the presence of *E. coli.* The CDC investigation team eliminated some potential causes for the *E. coli* outbreak and ultimately concluded that the ice in the barrels and the salad bar were likely causes of the *E. coli* poisoning. Seventy-three percent of the campers who reported consuming ice from the barrels on any day became ill.

Concerning the ice barrels, Dr. Brooks's report explains:

Throughout the drill team camp, the cafeteria placed trash barrels of ice in the foyer of the dormitory. The barrels were double-lined with plastic bags, punctured at the top to allow escape of trapped air.... However, no scoop was provided in the trash barrels; camp attendees could dip their hands or cups directly into the ice. Ice was placed out three times daily in two to three barrels for approximately 1–3 hours at a time. When the barrels were refilled, the old ice and meltwater were sometimes discarded, the barrels cleaned, and the plastic liners replaced. At other times, fresh ice was added on top of the ice and water remaining in the barrel. Staff and drill team camp attendees reported seeing grass, paper trash, and chewing gum at various times in the ice.

The Harveys sued UNT, pleading that UNT's negligence in serving ice in open garbage barrels without ice scoops, failing to wash lettuce and bean sprouts served to the campers, undercooking food, and failing to utilize sanitary procedures in the preparation of raw meat all proximately caused Catherine's injuries. In deposition excerpts presented to the trial court concerning UNT's plea to the jurisdiction, Dr. Wayne Shandera, the Harveys' expert witness, testified that in his opinion Catherine's *E. coli* poisoning was caused by the ice and indicated that in his opinion the likelihood that her poisoning came from another source was "less than 1 in 50,000." UNT's camp director, Dennis Fisher, said that UNT was responsible for providing the ice and for "making sure that the barrel had a scoop." The only people who provided ice to the drill team campers were UNT employees. Wanda Lowe, UNT's cafeteria manager, explained:

Q. In your experience as a dietician and someone who has been in charge of food safety, do you think it's a good idea to have ice in an ice barrel without a scoop?

A. No.

Q. Why not?

A. A scoop is safer.

Q. In what way?

A. Hands do not have to come in contact with ice.

---

**2.** The Harveys provided the trial court with a certified copy of this report in their response to UNT's plea to the jurisdiction.

Q. What's wrong with hands coming in contact with the ice?

A. You don't know where those hands have been, if you have clean hands.

Q. They can carry bacteria?

A. We have bacteria on our hands all the time.

Q. And that's why you think ice barrels should have scoops?

A. Yes.

We now apply the law to these facts.

### IV. SECTION 101.021(2) OF THE TEXAS TORT CLAIMS ACT

 The Texas Tort Claims Act waives the state's sovereign immunity from suit for:

personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997). This waiver of sovereign immunity is a limited waiver, allowing suits to be brought against governmental agencies, like UNT, in only certain narrowly-defined circumstances. *See Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001). Mere reference to the Act in a plaintiff's pleading does not establish the State's consent to be sued under the limited immunity waiver. *Id.* A plaintiff must plead facts sufficient to invoke a waiver of the Act. *Brown*, 80 S.W.3d at 555. We must look to the terms of the Act and then determine whether the liability theories pleaded, the facts pleaded, and the evidence presented in response to the plea to the jurisdiction demonstrate a claim within the Act's waiver provisions.

### A. Claims for condition of property lacking integral safety component; the ice barrels

 A governmental unit may waive immunity under the condition of tangible personal property portion of section 101.021(2) if it provides equipment that is defective because it lacks an integral safety component. *See, e.g., Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex. 1989) (swimming attire provided by state not containing life preserver lacked integral safety component, and this condition of tangible personal property triggered waiver of immunity); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex.1976) (football uniform provided by university without knee brace lacked integral safety component, and this condition of tangible personal property triggered waiver of immunity); *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex.1975) (hospital bed provided by hospital without bed rails lacked integral safety component, and this condition of tangible personal property triggered waiver of immunity); *Hampton v. Univ. of Tex.-M.D. Anderson Cancer Ctr.*, 6 S.W.3d 627, 631 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (hospital bed provided by hospital with bed rails that were not activated by hospital lacked integral safety component, and this condition of tangible personal property triggered waiver of immunity); *Tex. Dep't of MHMR v. McClain*, 947 S.W.2d 694, 697 (Tex.App.-Austin 1997, writ denied) (lockers and wheelchair provided by hospital lacked integral safety component, and these conditions of tangible personal property triggered waiver of immunity); *McBride v. Tex. Dep't of Criminal Justice*, 964 S.W.2d 18, 22 (Tex.App.-Tyler 1997, no pet.) (barrel provided by prison without handles lacked integral safety component, and this condition of tangible personal property triggered a waiver of immunity). Here, the Harveys contend that UNT pro-

vided equipment that is tangible personal property, the ice barrels; that the ice barrels lacked an integral safety component, a scoop; and that this condition of the ice barrels provided by UNT caused Catherine's *E. coli* poisoning and damages.

We review the pleadings and the jurisdictional evidence presented regarding this claim. *See Bland ISD,* 34 S.W.3d at 554. The evidence shows that UNT was responsible for providing and did provide ice to the campers.[3] UNT provided the ice in open trash barrels. "Tangible personal property" means something that has a corporeal, concrete, and palpable existence. *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 178 (Tex. 1994). The ice barrels meet this definition and therefore are tangible personal property.

The term "condition" is not statutorily defined, but has been judicially defined as "either an intentional or an inadvertent state of being" and as "a particular mode or state of being of a thing." *Webb County v. Sandoval,* 88 S.W.3d 290, 294 (Tex. App.-San Antonio 2002, no pet.). UNT's cafeteria manager explained that ice barrels should have scoops for safety reasons; ice barrels without scoops are less safe because bacteria on hands gets on the ice. Thus, a scoop was an integral safety component of the ice barrels. The lack of a scoop was an intentional or inadvertent state, i.e., a condition, of the ice barrels. *See, e.g., Robinson,* 780 S.W.2d at 171; *Lowe,* 540 S.W.2d at 300; *Overton Mem'l Hosp.,* 518 S.W.2d at 529; *McClain,* 947 S.W.2d at 697; *McBride,* 964 S.W.2d at 22.

The next question is whether some relevant jurisdictional evidence exists that the lack of an ice scoop caused Catherine's injuries. "Cause" under this section means proximate cause. *Dallas County MHMR v. Bossley,* 968 S.W.2d 339, 343 (Tex.), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998); *see also Michael v. Travis County Hous. Auth.,* 995 S.W.2d 909, 912–15 (Tex.App.-Austin 1999, no pet.) (noting causation standard under section 101.021(2) is proximate cause, not direct cause, immediate cause, or sole cause). Lowe testified that scoops were necessary to prevent bacteria off of hands from getting into the ice and contaminating it. Dr. Brooks's CDC report explained that the *E.coli* outbreak was likely caused by the ice that became contaminated in the barrels. Seventy-three percent of the campers who consumed ice from the ice barrels became ill. Dr. Shandera opined that the contaminated ice also caused Catherine's injuries. Thus, there is some evidence that the lack of an integral safety component, the scoop, led to Catherine's injuries. *See, e.g., Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 585 (Tex.1996) (explaining that the Act's waiver of immunity is implicated when a state actor provides property that lacks an integral safety component and the lack of this safety component leads to the plaintiff's injuries).

In summary, the ice barrels were tangible personal property, and there is evidence that a condition of the barrels—the lack of a scoop, which was an integral

3. UNT claims that because the negligence paragraph of the Harveys' pleading indicates UNT "served" instead of "provided" ice and because the ice was not located in the cafeteria where food is "served," the Harveys have not pleaded a waiver of immunity. A plaintiff is required to plead facts invoking a waiver of immunity, not to use particular magic words.

*See Brown,* 80 S.W.3d at 555. We will not strictly construe the Harveys' pleadings against them as UNT asks us to do in this and other instances in its brief and reply brief. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446 (requiring us to construe jurisdictional pleadings in favor of the pleader).

safety component—proximately caused Catherine's *E. coli* poisoning. UNT would be liable to the Harveys for these injuries if it were a private person. *See, e.g., Austin Ranch Enters., Inc. v. Wells,* 760 S.W.2d 703, 710 (Tex.App.-Fort Worth 1988, writ denied) (upholding actual damages for plaintiff who suffered food poisoning against restaurant that negligently caused the poisoning). Taking the allegations in the Harveys' petition as true and construing them in their favor, and considering the jurisdictional evidence presented to the trial court, we hold that the pleaded facts and the evidence trigger a condition-of-tangible-personal-property waiver under section 101.021(2). Therefore, the trial court did not err by denying UNT's plea to the jurisdiction on the Harveys' negligence claims based on the ice barrels. We overrule UNT's first, third, and fourth issues to the extent they contend that the negligence pleadings concerning the condition of the ice barrels provided by UNT do not state a claim within the Act's sovereign immunity waiver.

## B. Strict liability claims

■ In its second issue, UNT argues that there is no waiver of sovereign immunity for strict liability claims and that, therefore, the trial court erred by denying its plea to the jurisdiction on the Harveys' strict liability claims. We agree. The Legislature did not intend a waiver of immunity under the strict liability statute, so a plaintiff cannot use that statute to trip section 101.021(2)'s requirement that if the governmental unit were a private person it would be liable. *See Nat'l Sports & Spirit, Inc. v. Univ. of N. Tex.,* 117 S.W.3d 76, 83 (Tex.App.-Fort Worth 2003, no pet. h.); *see also* Tex. Civ. Prac. & Rem.Code Ann. ch. 82. Accordingly, we sustain UNT's second issue.

## C. Other negligence claims

The Harveys also pleaded that UNT was negligent by placing unwashed, prepackaged mixed-leaf greens on the salad bar, by failing to wash bean sprouts placed in a spinach salad, by undercooking food, by preparing poultry on the same counter top or cutting board as other food items, by failing to properly clean items used in the preparation of raw meat before using the items in other food preparation, and because its employees failed to wash their hands thoroughly after handling raw meats. These averments do not state claims within the Act's limited waiver of sovereign immunity for a variety of reasons.

■ The substance of the Harveys' complaints concerning the mixed-leaf greens and bean sprouts is that UNT failed to use water to wash these items. These are allegations of a nonuse, not that UNT was negligent in its actual use of the lettuce and bean sprouts and not that it provided property that lacked an integral safety component. *Cf. Kerrville State Hosp.,* 923 S.W.2d at 585. Even assuming water could be considered tangible personal property, claims involving a failure to use or the nonuse of property are not within the Act's sovereign immunity waiver. *Miller,* 51 S.W.3d at 587. Thus, the Harveys' pleadings concerning UNT's alleged failure to wash lettuce and bean sprouts do not state an actionable claim under section 101.021(2). *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2).

■ The allegation that UNT undercooked food may constitute a "condition" of the food under the Act. *See Webb County,* 88 S.W.3d at 295 (holding plaintiff's claim regarding negligent condition of food served met requirements for waiver of immunity). However, the jurisdictional evidence does not show that any specific food item was undercooked, that Catherine ate

undercooked food, or that undercooked food caused Catherine's injuries. Instead, the evidence shows a "less than 1 in 50,-000" chance that Catherine's *E. coli* poisoning was caused by something other than the ice. Thus, section 101.021(2)'s waiver provisions are not implicated by the Harveys' undercooked food claim. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2) (requiring personal injury to be caused by condition of tangible personal property).

■■■ The Harveys' contentions concerning poultry, raw meat, and other food preparation likewise do not implicate a waiver of sovereign immunity. The substance of these allegations is that UNT failed to utilize proper, sterile food-preparation techniques when dealing with poultry and raw meat. These types of allegations are not actionable under the Act. *See McClain v. Univ. of Tex. Health Ctr.*, 119 S.W.3d 4, 9 (Tex.App.-Tyler 2002, pet. filed) (holding plaintiff's claims that hospital negligently failed to use proper sterilization techniques not actionable under the Act); *see also Miller*, 51 S.W.3d at 587 (holding that claims involving failure to use property are not within Act's sovereign immunity waiver).

■■■ Finally, the Harveys' claim that UNT's employees negligently failed to adequately wash their hands does not allege a use or condition of tangible personal or real property. Therefore, this claim does not invoke a waiver of sovereign immunity. *York*, 871 S.W.2d at 179.

For all of these reasons, the trial court erred by denying UNT's plea to the jurisdiction on these claims. Therefore, we sustain UNT's first, third, and fourth issues to the extent that they contend the Harveys' claims, other than the ice-barrel-related claims, fail to trigger a waiver of sovereign immunity under the Act.

## V. CONCLUSION

We affirm the trial court's order denying UNT's plea to the jurisdiction on the Harveys' negligence claims concerning the ice barrels. We reverse the trial court's order denying UNT's plea to the jurisdiction on the Harveys' strict liability claims and the Harveys' other negligence claims and render judgment that UNT is immune from suit on those claims. We deny UNT's motion for reconsideration of our order denying UNT's motion to strike the Harveys' appendix.

## ORDER

We have considered "Appellant's Motion For En Banc Reconsideration."

It is the opinion of the court that said motion for rehearing en banc should be and is hereby denied and that the opinion and judgment of August 29, 2003, stand unchanged.

The clerk of this court is directed to transmit a copy of the order to the attorneys of record.

CAYCE, C.J. filed a dissenting opinion in which McCOY, J. joins.

CAYCE, Chief Justice, dissenting to denial of motion for en banc reconsideration.

### Introduction

Catherine Harvey alleges she became ill by eating ice contaminated with *E. coli* bacteria while attending drill team camp on the University of North Texas's (UNT) campus. The ice was provided by UNT employees in "garbage cans" lined with plastic bags and allegedly became contaminated by a person who may have used her hand or cup to remove ice from the gar-

bage cans. There is deposition testimony from UNT's cafeteria manager that it would have been "safer" if UNT had provided a "scoop" for removing the ice from the garbage cans. Based on these facts, a panel of this court has held that a scoop is an "integral safety component" of a garbage can and that the lack of a scoop in the garbage can was a condition or use of property that proximately caused Catherine's injuries.[1] In so holding, I believe the panel has stepped far beyond the "outer bounds" of what the Supreme Court of Texas and the overwhelming majority of courts of appeals have defined as a condition or use of property for finding a waiver of sovereign immunity under section 101.021(2) of the Tort Claims Act.[2]

Contrary to the panel's opinion, Catherine does not allege that, because UNT employees failed to provide scoops with garbage cans containing ice, the garbage cans were defective or lacked some integral safety feature. Nor does she allege that her injuries were proximately caused by UNT's use of the garbage cans to store ice. Instead, Catherine asserts that her injuries were caused by the nonuse of a scoop which she alleges UNT employees should have provided with the garbage cans. Under both recent and longstanding decisions of the Supreme Court of Texas and this court, the Tort Claims Act does not waive UNT's immunity from such a complaint.[3] I am, therefore, compelled to respectfully dissent to the court's denial of UNT's motion for en banc reconsideration.

## Catherine Did Not Allege That UNT Provided or Used Property That Lacked an Integral Safety Component and That the Lack of an Integral Safety Component Led to Her Injuries

To establish a waiver of sovereign immunity based on a claim that an injury was

1. *Univ. of N. Tex. v. Harvey*, No. 02–02–00320–CV, 2003 WL 22026544, at *4 (Tex. App.—Fort Worth Aug. 29, 2003, no pet. h.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 1997).

2. *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex.1996) (explaining that case establishing waiver of sovereign immunity based on state providing property lacking an integral safety component "represent perhaps the outer bounds of what [the Supreme Court of Texas has] defined as use of tangible personal property"); *see, e.g., San Antonio State Hosp. v. Cowan*, —— S.W.3d ——, 47 Tex. Sup.Ct. J. 221, 221–22, 2004 WL 74441, at *1–2 (Tex. Jan. 9, 2004) (walker and suspenders not unsafe merely because they were used by mental patient to commit suicide); *Dallas County MHMR v. Bossley*, 968 S.W.2d 339, 343 (Tex.) (unlocked door not lack of integral safety component that caused mental patient to escape and commit suicide), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998); *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex.1989)

(life preserver is integral part of swimming attire); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex.1976) (protective padding is integral safety component of football uniform); *see also Archibeque v. N. Tex. State Hosp.-Wichita Falls Campus*, 115 S.W.3d 154, 159–60 (Tex.App.—Fort Worth 2003, no pet.) (neither plastic bag and shoe laces used by mental patient to commit suicide nor failure to use flashlight was condition or use of property causing death of patient); *Bonham v. Tex. Dep't of Criminal Justice*, 101 S.W.3d 153, 160 (Tex.App.—Austin 2003, no pet.) (lack of surveillance equipment not an integral safety component of men's bathroom causing sexual assault); *Tex. Dep't of MHMR v. Lee*, 38 S.W.3d 862, 867 (Tex.App.—Fort Worth 2001, pet. denied) (absence of lock on door not lack of integral safety component causing rape of patient).

3. *See, e.g., San Antonio State Hosp.*, —— S.W.3d at ——, 47 Tex. Sup.Ct. J. at 221–22, 2004 WL 74441, at *1–2; *Bossley*, 968 S.W.2d at 343; *Archibeque*, 115 S.W.3d at 159–60; *Lee*, 38 S.W.3d at 867.

caused by the condition or use of property lacking an integral safety component, the Supreme Court of Texas has held the plaintiff must allege "that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries."[4] Contrary to the panel opinion, however, Catherine did not allege or offer proof showing that a scoop is an integral safety component of a garbage can, an integral part of a garbage can, or a component of a garbage can. Thus, even taking the facts alleged in Catherine's pleadings as true and construing them in her favor as we should,[5] the record contains no allegations or supporting proof that property used by UNT lacked an integral safety component and that the lack of the integral safety component caused her injuries. Because Catherine makes no such claim in this case, UNT's immunity is clearly not waived by section 101.021(2).[6]

### Catherine's Allegation That the Lack of a Scoop Caused Her Injuries Is a Claim Based on Nonuse of Property

### Which She Alleges UNT's Employees Should Have Provided. The Tort Claims Act Does Not Waive Sovereign Immunity From Such a Complaint

Catherine's claim that the lack of a scoop caused her injuries is actually a claim based, not on the condition or use of property, but instead on the *nonuse* of property—a scoop—which she alleges UNT's employees should have provided to remove ice from the garbage can. The Tort Claims Act does not provide for the waiver of sovereign immunity for injuries caused by nonuse of property.[7] Nor does the Act provide for the waiver of sovereign immunity for injuries caused by the ordinary negligence of state employees.[8] Section 101.021(2) of the Tort Claims Act expressly requires that for immunity to be waived, personal injury or death must be caused by the condition or "use" of tangible personal property.[9] An injury such as Catherine's, that is allegedly caused by a state employee's allegedly negligent failure

**4.** *San Antonio State Hosp.,* —— S.W.3d at ——, 47 Tex. Sup.Ct. J. at 221–22, 2004 WL 74441, at *1–2 ("The precedential value of [*Lowe* and *Robinson*] is ... limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries." (quoting *Kerrville State Hosp.,* 923 S.W.2d at 585)); *see Robinson,* 780 S.W.2d at 171 (life preserver is integral part of swimming attire); *Lowe,* 540 S.W.2d at 300 (protective padding is integral component of football uniform).

**5.** *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993).

**6.** *See San Antonio State Hosp.,* —— S.W.3d at ——, 47 Tex. Sup.Ct. J. at 221–22, 2004 WL 74441, at *1–2.

**7.** *San Antonio State Hosp.,* —— S.W.3d at ——, 47 Tex. Sup.Ct. J. at 221–22, 2004 WL 74441, at *1–2 (property that is alleged to have caused injury must be used by governmental unit to waive immunity); *see Kassen v. Hatley,* 887 S.W.2d 4, 14 (Tex.1994) (failure to provide medication was nonuse and did not constitute "use" of tangible property that caused death); *Bonham,* 101 S.W.3d at 159 (layout of facility that was context of injury was not used and thus did not bring claim within the Act's waiver of sovereign immunity).

**8.** *See Bossley,* 968 S.W.2d at 343; *Archibeque,* 115 S.W.3d at 160; *Lee,* 38 S.W.3d at 868.

**9.** TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). The term "use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Marroquin v. Life Mgmt. Ctr. for MH/MR Svcs.,* 927 S.W.2d 228, 230–31 (Tex.App.—El Paso 1996, writ dism'd w.o.j.) (quoting *LeLeaux v. Hamshire–Fannett I.S.D.,* 835 S.W.2d 49, 51 (Tex.1992)).

to use property, does not support a claim under the Act.[10]

### Even Had Catherine Alleged That Her Injuries Were Proximately Caused by the Condition or Use of Property Lacking an Integral Safety Component, the Lack of a Scoop Cannot Be Said to Have Caused Her Injuries

Even if Catherine did allege that her injuries were caused by property lacking an integral safety feature (which she did not), a garbage can without a scoop cannot be said to have proximately caused Catherine's injuries. "Property does not cause injury if it does no more than furnish the condition that makes the injury possible."[11] The garbage can containing the contaminated ice did no more than furnish the condition that made it possible for Catherine to eat the ice. It did not cause the ice to become contaminated or cause Catherine to become ill from eating the ice, and Catherine does not allege that it did.

The same can be said for the scoop that Catherine claims UNT should have provided with the garbage can. While there is testimony in this case that the use of a scoop may have made it "safer" to consume ice stored in a garbage can, the absence of a scoop did not cause Catherine to become ill. Catherine's eating of contaminated ice from a garbage can may have led to her injuries, but the lack of a scoop in the garbage can in which the ice was stored is too attenuated from Catherine's injuries to be said to have caused them.

### Conclusion

Because the panel opinion is unsupported by Catherine's pleadings and repre-sents such an extraordinary departure from prevailing Texas case law defining what does and does not constitute a condition or use of tangible personal property under the Tort Claims Act, I would grant UNT's motion for en banc reconsideration.[12]

McCOY, J. joins.

10. *San Antonio State Hosp.,* —— S.W.3d at
——, 47 Tex. Sup.Ct. J. at 221–22, 2004 WL
74441, at *1–2; *Bossley,* 968 S.W.2d at 343;
*Archibeque,* 115 S.W.3d at 159–60; *Lee,* 38
S.W.3d at 868.

11. *Bossley,* 968 S.W.2d at 343; *Archibeque,*
115 S.W.3d at 159; *Lee,* 38 S.W.3d at 867.

