NUMBER 13-16-00285-CV



# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

NORMA PERALES,                                                  **Appellant,**

**v.**

ROEL LARA AND ALFONSO
SANTOS OBREGON JR.,                                  **Appellees.**

## On appeal from the County Court at Law No. 4
## of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Contreras and Hinojosa
### Memorandum Opinion by Justice Contreras

Appellant Norma Perales sued appellees Roel Lara and Alfonso Santos Obregon Jr., alleging that they fraudulently prevented her from being considered for an employment position with the Robstown Independent School District (the District). In this appeal, Perales argues by two issues that the trial court erred by granting a plea to the

jurisdiction based in part on section 101.106(f) of the Texas Tort Claims Act (TTCA). We affirm.

## I. BACKGROUND

At the time of the events made the basis of this lawsuit, Perales was a teacher employed by the District, Obregon was the District's superintendent, and Lara was the District's assistant superintendent. Following the end of the 2010–2011 school year, the District offered its employees a Voluntary Exit Incentive Agreement (Exit Agreement) under which employees could choose to waive their continuing contract, resign their position, and accept an incentive stipend of $5,000. Perales accepted the offer and signed the Exit Agreement on March 21, 2011.[1]

According to Perales's live petition, her principal asked her in late May 2011 to reconsider her resignation and to continue teaching in her current position. Perales alleged that, in early June, she met with Lara and asked him about the possibility of rescinding her resignation. Perales alleged in her petition that Lara advised her she could either: (1) rescind her resignation and "forego" the incentive payment, despite the fact that the rescission period under the agreement had expired; or (2) keep the incentive payment and re-apply for employment with the District. Perales asserts that, because

---

[1] The Exit Agreement provided in part:

Participant additionally waives and releases any right Participant may have to recover in any lawsuit or proceeding of any type on behalf of Participant. This paragraph is not intended to limit Participant from instituting legal action for the sole purpose of enforcing this Agreement. Participant also agrees to waive any right to reinstatement or any future employment or relationship with the District. However, the District retains the right, in its sole discretion, to consider Participant for future employment in any capacity.

. . . .

Participant acknowledges that Participant will be given seven (7) calendar days after signing this Agreement to rescind, revoke or cancel this Agreement, and that a Rescission Notice for this purpose is located at the end of this Agreement.

2

both Lara and Obregon "acknowledged" to her that other District employees had been able to resign, keep their incentive payments, then successfully re-apply for employment with the District, she decided to do so as well.

Perales submitted her application for re-employment and claims to have received an email from Lara's secretary stating that she had completed the application process. However, according to Perales, Lara told her principal that she had not completed the application and that her application still needed to be "processed." Later, Perales received an email from Lara stating that she could "reapply and go through the interview process when the administration is ready to interview and start the interview process." After several weeks passed and she had still not been called for an interview, Perales contacted her school's assistant principal, who advised Perales on July 18, 2011 that "she had reviewed the list of applicants and that [Perales's] name did not appear on the list." Meanwhile, according to Perales's petition, Lara told the assistant principal that Perales "had already retired," and he told another teacher that Perales "had not submitted an application for employment."

Perales then met with Obregon on August 24, 2011. Perales claims in her petition that Obregon told her that Lara had made "several lapses in judgment" and "if she chose to retire that he would be able to provide her with a consultant job with [the District]."[2] The following day, Perales met again with Obregon and "accepted his offer" to retire and be re-hired for one of the new "coaching" positions. According to Perales, Obregon told her

_____

[2] Perales alleged specifically:

Obregon contended that there would be several "consultant" or curriculum "coaching" positions that would be created within the [District] and funded by President Obama's "stimulus plan". Defendant Obregon further contended that these new positions would be offered to retiring teachers, including his own wife, and would enable retired teachers to work part-time and receive retirement benefits as well.

3

on October 10, 2011 that "her application would be processed" and that "two principals were interested in offering her a coaching position" at their schools. However, she was never contacted about that position.

In her lawsuit, Perales argued that Lara and Obregon "fraudulently induced [her] not to rescind her resignation based on their representations that they would allow her to submit an employment application as a new employee for a 2011–12 teaching contract which would be considered by [the District]." She argued that the law required Lara and Obregon "to process [her] application and to list her name as an applicant" and that "it was not within their scope of authority not to process her application." She sought damages for fraud and intentional infliction of emotional distress.

Lara and Obregon answered the suit and filed a plea to the jurisdiction arguing that they were immune to suit and that the suit should be dismissed under subsection 101.106(f) of the TTCA because the alleged actions were done within the course and scope of their employment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (West, Westlaw through 2017 1st C.S.). The pleas were accompanied by affidavits from both defendants in which they stated: "All of my interactions, communications, and activities undertaken in connection with Norma Perales and her employment status, as described in the Plaintiff's Original Petition, were done so in my capacity as a District employee, within the course and scope of my employment with the District, and generally related to my service to the District." Lara stated in his affidavit that his job duties included "providing information to District employees (current, past, and prospective) about the [Exit Agreement] program, and applications for employment." Obregon stated in his affidavit that his job duties included "interacting and communicating with District

4

employees (current, past, and prospective), like Norma Perales, regarding any and all matters related to employment."

Several months later, Lara and Obregon filed a "Motion to Dismiss Subject to Plea to the Jurisdiction" in which they repeated their argument for dismissal under TTCA subsection 101.106(f).[3] After a hearing on February 24, 2016, the trial court orally granted the plea to the jurisdiction and rendered an order granting the motion to dismiss Perales's suit under subsection 101.106(f). Subsequently, Lara and Obregon moved for entry of a "corrected order" specifying that the trial court granted the plea to the jurisdiction rather than the motion to dismiss.

Perales then filed a timely motion for reconsideration or new trial arguing that Lara and Obregon are not immune to suit because they "conspired . . . to prevent [her] application from being reviewed or considered by any of the District's principals," and because they did not cite any authority showing "that they were authorized [or] that it was within their scope of their employment to determine whether an employment application could even be considered by [the District]." Perales noted in her motion that, according to District policy, although "[t]he Superintendent has sole authority to make recommendations to the Board regarding the selection of contractual personnel," the District's board of trustees "retains final authority for employment of contractual personnel." Perales further argued that, although District policy provides that "[t]he Superintendent has sole authority to make recommendations to the Board regarding the selection of all personnel, except that the Board may delegate final authority for those

---

[3] The record does not contain any written response from Perales to either the plea to the jurisdiction or the motion to dismiss.

5

decisions to the Superintendent," Lara and Obregon "did not present nor cite any authority that established that the Board had indeed delegated the final authority to select personnel—because there is none." Lara and Obregon filed a response reiterating their position that their "alleged acts or inaction[s] . . . were all generally related to [their] service to, and fell within the scope of their employment with the District."[4]

The trial court orally denied the motion for reconsideration. It later rendered a second order, pursuant to Lara and Obregon's request, stating that the plea to the jurisdiction had been granted. This appeal followed.

## II. DISCUSSION

By her first issue, Perales argues that the trial court erred in granting the plea to the jurisdiction. She argues by her second issue that, if we find no error, we should remand for the opportunity to replead.

### A. Standard of Review

Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). The plaintiff has the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex. App.—Fort Worth 2003, pet. denied). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Miranda*,

---

[4] Lara and Obregon noted in their response that "the District ultimately *did* re-employ [Perales] and she remains employed there currently." They have not moved to dismiss the appeal as moot.

6

133 S.W.3d at 226, 228.

When the existence of jurisdictional facts is challenged, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised, even when the evidence implicates the merits of the cause of action. *Id.* at 227; *see City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). If the evidence is undisputed or fails to raise a fact question, the trial court rules on the jurisdictional issue as a matter of law. *Miranda*, 133 S.W.3d at 228. But if the evidence creates a fact question regarding the jurisdictional issue, then the fact question must be resolved by the fact finder. *Id.* at 227–28. In considering the evidence, we take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.*

**B.  Analysis**

Governmental immunity, which applies to school districts, defeats a trial court's subject matter jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008); *Miranda*, 133 S.W.3d at 225. A governmental entity's employee, acting within the course and scope of his employment, has the same immunity as the governmental entity. *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 373 (Tex. 2012) (noting that "the doctrine of governmental immunity protects the public fisc by prohibiting suits against governmental units (or their employees acting within the scope of their employment) except in narrow circumstances prescribed by statute.").

A plaintiff may sue a government employee in his or her official capacity, individual capacity, or both. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.7 (Tex. 2009). A suit against a government employee in his or her official capacity is considered a suit

against the governmental employer and is barred unless immunity is explicitly waived by the Legislature. *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011). Conversely, a suit against a government employee in his or her individual capacity seeks to impose personal liability on the individual. *Aguilar v. Frias*, 366 S.W.3d 271, 273 (Tex. App.—El Paso 2012, pet. denied); *Nueces Cty. v. Ferguson*, 97 S.W.3d 205, 213–14 (Tex. App.—Corpus Christi 2002, no pet.).

Perales's live petition does not specify whether Lara and Obregon were sued in their official or individual capacities or both. On appeal, she argues that her suit was brought against the defendants in their individual capacities only.[5] She contends that, because they were sued in their individual capacities only, they may not assert governmental immunity as a defense, but may instead may only raise the defense of official immunity. Official immunity is a defense available to government employees sued in their individual capacity, and is applicable only when the suit at issue "aris[es] from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). When official immunity shields a governmental employee from liability, sovereign immunity shields the governmental employer from vicarious liability. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *see DeWitt v. Harris Cty.*, 904 S.W.2d 650, 653 (Tex. 1995).[6]

---

[5] Perales notes that her live petition states that each defendant is "an individual who is a resident of Texas [and] has been served with process and answered herein." The petition does not state, however, in which capacity those individuals were sued.

[6] Citing *DeWitt*, the Texas Supreme Court stated in *Franka* that "a successful assertion of official immunity results in a waiver of governmental immunity" under the TTCA. *Franka v. Velasquez*, 332 S.W.3d 367, 383–84, n.79 (Tex. 2011) (citing *DeWitt v. Harris Cty.*, 904 S.W.2d 650, 653 (Tex. 1995)). This was evidently erroneous; under *DeWitt*, a successful assertion of official immunity results in the *retention* of governmental immunity. *See DeWitt*, 904 S.W.2d at 653 (holding that, under the TTCA, the governmental unit's respondeat superior liability is predicated upon the liability of its employee and observing that "[i]t

8

We need not decide whether official immunity applies because we disagree that Perales's suit was brought against Lara and Obregon in their individual capacities. Section 101.106(f) of the TTCA provides that suits brought against government employees are "considered to be against the employee *in the employee's official capacity only*" when the suit (1) is "based on conduct within the general scope of that employee's employment" and (2) "could have been brought under [the TTCA] against the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (emphasis added). And the Texas Supreme Court has held that, "[b]ecause the [TTCA] is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the TTCA]' for purposes of section 101.106." *Garcia*, 253 S.W.3d at 659; *see Franka*, 332 S.W.3d at 375 (noting that "any tort claim against the government is brought 'under' the [TTCA] for purposes of section 101.106, even if the [TTCA] does not waive immunity"). Accordingly, section 101.106(f) "foreclose[s] suit" against a government employee "if he was acting within the scope of employment," regardless of the capacity in which the employee is nominally sued. *Franka*, 332 S.W.3d at 381–82.[7]

Therefore, the only pertinent question here is whether, under the standard of review applicable to jurisdictional pleas, Perales's suit is based on conduct of Lara and

---

would serve no legislative purpose to declare a waiver of sovereign immunity when the basis of liability is respondeat superior and the acts of the employee are covered by official immunity"); *see also Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000).

[7] There is an exception to this rule for *ultra vires* claims, which are claims "directed toward determining or protecting a party's rights against a state official acting without legal or statutory authority." *Beeman v. Livingston*, 468 S.W.3d 534, 538 (Tex. 2015). But such actions are permissible only to the extent they seek prospective remedies such as injunctive relief, rather than retrospective remedies such as damages. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373–74 (Tex. 2009). Perales's live petition does not purport to raise an *ultra vires* claim, nor does it seek prospective remedies. Therefore, this exception does not apply.

9

Obregon that was within the general scope of their employment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). If so, the trial court was required to dismiss the suit. *See id*.[8] Under the TTCA, "scope of employment" means "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." *Id*. § 101.001(5) (West, Westlaw through 2017 1st C.S.). The Texas Supreme Court has stated that the scope-of-employment analysis is "fundamentally objective" and asks whether there is a "connection between the employee's job duties and the alleged tortious conduct." *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017).

Perales alleged in her live petition that Lara and Obregon "conspired to keep her application for employment from being processed so as to prevent any school principal from considering [her] application for employment." She further alleged that they "fraudulently claimed that her application was posted within the school district for consideration of employment" and "ultimately prevented the school district from re-hiring [her] for the subsequent school years." We conclude that these allegations, taken as true, concern only conduct within the general scope of Lara's and Obregon's employment with the District.

---

[8] Subsection 101.106(f) provides in its entirety as follows:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (West, Westlaw through 2017 1st C.S.). Perales did not file amended pleadings dismissing Lara and Obregon and naming the District as a defendant.

10

Under the Texas Education Code, a school district's board of trustees is required to "adopt a policy providing for the employment and duties of district personnel" under which "the superintendent has sole authority to make recommendations to the board regarding the selection of all personnel other than the superintendent, except that the board may delegate final authority for those decisions to the superintendent." TEX. EDUC. CODE ANN. § 11.1513(a) (West, Westlaw through 2017 1st C.S.). Perales notes that Lara and Obregon have not produced evidence showing that the board has delegated "final authority" over employment decisions to the superintendent, but that does not change the fact that the superintendent has "sole authority" to make recommendations to the board regarding those decisions. *See id.* She concedes that employment applications are first presented to the superintendent and assistant superintendent, and that those officials screen the applications before presenting them to school principals and, eventually, the board of trustees.[9] If, as alleged, Lara and Obregon conspired to exclude Perales's employment application as part of their screening process, that action was connected to their job duties and constituted the "performance of a task lawfully assigned to an employee by competent authority." *See id.* § 101.001(5); *Laverie*, 517 S.W.3d at 753.[10]

For the foregoing reasons, we conclude that the facts alleged in Perales's live petition, construed liberally and taken as true, do not affirmatively show that the trial court

---

[9] According to a job description attached to his affidavit, Lara's job duties includes "[o]versee[ing] the district application and screening process and ensur[ing] that the district is represented as an attractive employer."

[10] This would be true even if Lara and Obregon were "motivated by ulterior motives or personal animus." *See Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017). We note that Perales does not explicitly allege that Lara or Obregon were so motivated.

has jurisdiction.[11] *See Miranda*, 133 S.W.3d at 226. Accordingly, the trial court did not err in granting the plea to the jurisdiction. Perales's first issue is overruled.

As to Perales's second issue, in which she asks that we remand for the opportunity to amend her pleadings, she has not supported this issue with argument or authority, so it is waived. *See* TEX. R. APP. P. 38.1(i). We note in any event that Perales's live petition affirmatively demonstrates incurable defects in jurisdiction; therefore, she would not be entitled to the opportunity to amend her pleadings even if the issue were adequately briefed. *See Miranda*, 133 S.W.3d at 226–27.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Justice

Delivered and filed the
11th day of January, 2018.

---

[11] In light of this conclusion, we need not address Perales's argument on appeal that Lara's and Obregon's affidavits were "conclusory and self-serving."