COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-263-CV

 

 

JOHN
MCDONALD AND
                                                     APPELLANTS

CHERYL MCDONALD,
INDIVIDUALLY 

AND AS NEXT FRIEND FOR 

MINOR PATRICK TUCKER
MCDONALD

 

                                                   V.

 

CITY OF THE COLONY, TEXAS                                                APPELLEE

 

                                              ------------

 

            FROM THE 211TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  INTRODUCTION








This is an interlocutory appeal by Appellants
John McDonald and Cheryl McDonald, individually and as next friend for minor
Patrick Tucker McDonald, from the trial court=s order
partially granting Appellee the City of The Colony, Texas=s plea
to the jurisdiction.  See Tex.
Civ. Prac. & Rem. Code Ann. '
51.014(a)(8) (Vernon 2008).  The
McDonalds raise four issues on appeal. 
For the reasons discussed below, we hold that the McDonalds invoked the
trial court=s subject matter jurisdiction
regarding their negligence claims for use of motor-driven equipment and
regarding their premises defect claim by alleging facts and presenting
jurisdictional evidence establishing a waiver of the City=s
governmental immunity pursuant to the Texas Tort Claims Act (the TTCA).[2]  We also hold that the McDonalds invoked the
trial court=s subject matter jurisdiction
regarding their nuisance claim by alleging facts and presenting jurisdictional
evidence establishing a waiver of the City=s
governmental immunity for a nuisance rising to the level of an unconstitutional
taking.[3]  We further hold that the facts pleaded by the
McDonalds and the jurisdictional evidence presented to the trial court did not
raise a fact question concerning the trial court=s
subject matter jurisdiction over their negligence claims for use of tangible
personal property or for use of motor-driven vehicle or over their breach of
warranty claims.  Consequently, we will
affirm in part and reverse in part the trial court=s order
on the City=s plea to the jurisdiction.[4]








                          II.  FACTUAL AND PROCEDURAL BACKGROUND

The City leased to Club Fore Sports Center a tract
of land for the construction and operation of a golf driving range and public
recreation facility (the AGolf Center@).  Appellant John McDonald subsequently
purchased the Golf Center business and assumed the lease of the premises
pursuant to a written assignment.








The City owns and operates a wastewater lift
station on a portion of the leased premises as part of its wastewater
collection system.  The lift station is
located on the east side of the leased premises and is surrounded by a chain
link fence with a gated entrance.  The
lift station uses motor-driven equipment to pump raw sewage uphill from the
low-lying area where the station is located to another part of the sewage
system located on adjacent land owned by the City.  It was designed to accommodate four
submersible pumps.  When the McDonalds
filed suit in May 2007, two of the four submersible pumps were damaged beyond
repair and no longer in operation and one of the two operational pumps was Aassumed
to be offline in order to meet the [Texas Commission on Environmental Quality]
TCEQ requirements.@ 
Thus, the operating capacity of the lift station was limited to 3.5
million gallons per day (MGD) (the operating capacity of the single online
operational pump), although the station was operating at an estimated capacity
of 5.0 MGD.

Wastewater enters the lift station through an
influent box that was designed to include a mechanical bar screen.  The mechanical bar screen uses a conveyor
belt system to remove any large objects that enter the lift station with the
wastewater flows.  The mechanical bar
screen protects the pumps from those large objects and is required for the
reasonable and safe use of the pumps. 
Due to frequent mechanical and maintenance problems with the mechanical
bar screen, the City removed it around October 2006, which left the influent
box and the underground motors and pumps exposed.  The City covered the opening with a metal
cover Ato
prevent malodorous gases from escaping.@








In September 2006, the McDonalds learned that the
lift station was emitting harmful hydrogen sulfide gas (H2S).  Mr. McDonald contacted the TCEQ, complaining
of headaches, nausea, dizziness, eye and throat irritation, and corneal
opacity.  The TCEQ took air quality
samples from the lift station, and on September 29, 2006, it issued a report
that H2S concentrations from these samples were Awithin
range to cause the symptoms that Mr. McDonald [was] experiencing.@  Specifically, the TCEQ reported that A[o]f the
73 samples that were taken, 36 were well above the residential, recreational,
business or commercial regulation 30-minute standard of 0.08 ppm,@[5] and it Astrongly
recommend[ed]@ that actions be taken to reduce
exposure to H2S.  Mr. McDonald
also hired Green Star Environmental to follow up with independent air quality
tests, and these tests revealed that the lift station was emitting H2S
in excess of nationally prescribed reporting limits.

Mr. McDonald closed the Golf Center in October
2006 because of the harmful gas emissions. 
In May 2007, the McDonalds filed suit against the City, asserting claims
for nuisance, breach of contract, inverse condemnation, breach of warranty,
negligence, gross negligence, and negligence per se.  They twice amended their petition to include
causes of action for premises defect and fraud and to seek injunctive
relief.  In addition to claims based on
the City=s
operation of the lift station, the McDonalds also alleged that the City drove
large vehicles and back hoes over the grassy areas of the Golf Center, creating
deep, muddy ruts on the leased premises and damaging the golf greens and
sprinkler system.








The City filed a plea to the jurisdiction,
asserting that it was immune from suit. 
The McDonalds filed a response to the City=s plea
and attached as evidence an affidavit of John McDonald, the agreement between
the City and Club Fore Sports Center and various assignments of that agreement,
the TCEQ report, and a laboratory report from Green Star Environmental=s air
quality testing around the lift station. 
In a supplemental response to the City=s plea
to the jurisdiction, the McDonalds attached a seventy-page preliminary design
report dated June 25, 2007 (the APreliminary
Report@), which
was prepared at the City=s request by a third-party
engineering firm and which explained the condition of the lift station and
recommended certain improvements to it. 








After a hearing on the City=s plea,
the trial court orally granted the City=s plea
regarding all of the McDonalds=s claims
except for their breach of contract and inverse condemnation claims.  In June 2008, after hearing the McDonalds=s motion
for reconsideration, the court entered a written order granting the City=s plea
to the jurisdiction with regard to the McDonalds=s causes
of action for nuisance, breach of warranty, negligence, gross negligence,
negligence per se, premises defect, and pure takings.[6]  It denied the plea with regard to the
McDonalds=s breach of contract and inverse
condemnation claims.  The McDonalds
timely perfected an appeal to this court.

                                     III.  STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial
court=s
authority to determine the subject matter of the action.  Tex. Dep=t of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Whether a trial court has subject matter
jurisdiction and whether a pleader has alleged facts that affirmatively
demonstrate the trial court=s
subject matter jurisdiction are questions of law that we review de novo.  Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.
2004); Tex. Natural Res. Conservation Comm=n v. IT‑Davy, 74
S.W.3d 849, 855 (Tex. 2002).








The determination of whether a trial court has
subject matter jurisdiction begins with the pleadings.  Miranda, 133 S.W.3d at 226.  The plaintiff has the burden to plead facts
affirmatively showing that the trial court has jurisdiction.  Tex. Ass=n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993); Univ. of N. Tex. v. Harvey, 124 S.W.3d 216, 220 (Tex. App.CFort
Worth 2003, pet. denied).  We construe
the pleadings liberally in favor of the pleader, look to the pleader=s
intent, and accept as true the factual allegations in the pleadings.  See Miranda, 133 S.W.3d at 226, 228; City
of Fort Worth v. Crockett, 142 S.W.3d 550, 552 (Tex. App.CFort
Worth 2004, pet. denied).

If a plea to the jurisdiction challenges the
existence of jurisdictional facts, we consider relevant evidence submitted by
the parties when necessary to resolve the jurisdictional issues raised, as the
trial court is required to do.  See
Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000) (confining
the evidentiary review to evidence that is relevant to the jurisdictional
issue). 

If the evidence creates a fact question regarding
the jurisdictional issue, then the trial court cannot grant the plea to the
jurisdiction, and the fact question will be resolved by the fact finder.  Id. at 227B28; Bland,
34 S.W.3d at 555.  If the relevant
evidence is undisputed or fails to raise a fact question on the jurisdictional
issue, however, the trial court rules on the plea to the jurisdiction as a
matter of law.  Miranda, 133
S.W.3d at 227B28; Bland, 34 S.W.3d at
555.  This standard mirrors our review of
summary judgments, and we therefore take as true all evidence favorable to the
nonmovant, indulging every reasonable inference and resolving any doubts in the
nonmovant=s favor.  City of El Paso v. Heinrich, No. 06‑0778,
2009 WL 1165306, at *9 (Tex. May 1, 2009) (citing Miranda, 133 S.W.3d at
228).








                                  IV.  GOVERNMENTAL IMMUNITY

In their first issue, the McDonalds argue that
the trial court erred by granting the City=s plea
to the jurisdiction on their claims for negligence, gross negligence,
negligence per se, premises defect, nuisance, and breach of warranty.  In their second issue, the McDonalds argue
that the trial court ignored the undisputed evidence in granting the City=s plea
to the jurisdiction on the grounds challenged in their first issue.  They do not address specific portions of the
record.  We liberally construe this issue
as part of the McDonalds=s first issue challenging the
trial court=s order granting the City=s plea
to the jurisdiction, and we address it in connection with their first
issue.  We address each of the McDonalds=s
arguments under their first and second issues below.

                         A.  GOVERNMENTAL IMMUNITY
AND THE TTCA








Generally, governmental units are immune from
suit unless the legislature expressly consented to the suit.  Jones, 8 S.W.3d at 638; Fed. Sign
v. Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997), superceded by statute
on other grounds as stated in Gen. Servs. Comm=n v.
Little-Tex. Insulation Co., 39 S.W.3d. 591, 593 (Tex. 2001).  Governmental immunity only applies to a city=s
governmental functions.  Tooke v. City
of Mexia, 197 S.W.3d 325, 343 (Tex. 2006). 
Thus, if a city is engaged in a proprietary function, the city is liable
to the same extent as a private entity or individual.  Dilley v. City of Houston, 148 Tex.
191, 222 S.W.2d 992, 993 (1949); see also Tooke, 197 S.W.3d at 343 (AA
municipality is not immune from suit for torts committed in the performance of
its proprietary functions, as it is for torts committed in the performance of
its governmental functions.@).  Conversely, 
a municipality engaged in a function defined by the Legislature to be
governmental is entitled to governmental immunity provided that the Texas
Legislature has not otherwise authorized a waiver of this immunity.  See City of Houston v. Clear Channel Outdoor,
Inc., 161 S.W.3d 3, 6 (Tex. App.CHouston
[14th Dist.] 2004), rev=d on
other grounds, 197 S.W.3d 386 (Tex. 2006).

The legislature gave such consent and granted a
limited waiver of immunity in the TTCA, which permits suits to be brought
against governmental units in certain narrowly-defined circumstances.  Tex. Dep=t of
Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001); see
also Dallas County MHMR v. Bossley, 968 S.W.2d 339, 341 (Tex.), cert.
denied, 525 U.S. 1017 (1998).  The
TTCA provides that a governmental unit is liable for:

(1)  property damage, personal injury, and death
proximately caused by the wrongful act or omission or the negligence of an
employee acting within his scope of employment if:

 

(A)  the property damage, personal injury, or
death arises from the operation or use of a motor‑driven vehicle or motor‑driven
equipment; and








 

(B)  the employee would be personally liable to
the claimant according to Texas law; and

 

(2)  personal injury and death so caused by a
condition or use of tangible personal or real property if the governmental unit
would, were it a private person, be liable to the claimant according to Texas
law.

 

Tex. Civ. Prac. & Rem. Code Ann. ' 101.021.

A plaintiff must plead facts sufficient to invoke
a waiver of governmental immunity under the TTCA.  County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002);  Univ. of N. Tex.,
124 S.W.3d at 222.  We must look to the
terms of the TTCA and then determine whether the liability theories pleaded,
the facts pleaded, and the jurisdictional evidence presented demonstrate a
claim falling within the TTCA=s waiver
of immunity.  Univ. of N. Tex.,
124 S.W.3d at 222.

              B.
Governmental or Proprietary Function under the TTCA








A municipality=s
governmental functions are A>in the
performance of purely governmental matters solely for the public benefit.=@  Tooke, 197 S.W.3d at 343 (citations
omitted).  For purposes of tort
liability, the Legislature has statutorily included Agarbage
and solid waste removal, collection, and disposal@ and water
and sewer services in a nonexclusive list of governmental functions.  Tex. Civ. Prac. & Rem. Code Ann. '
101.0215(a)(6), (32).  Thus, a
municipality may be held liable in tort for damages caused in the carrying out
of these functions only if the plaintiff pleads facts sufficient to invoke a
waiver of municipality=s governmental immunity under
the TTCA.  See id.; Brown,
80 S.W.3d at 555.

Here, all of the McDonalds=s tort
claimsCspecifically,
their negligence, gross negligence, negligence per se, and premises defect
claimsCinvolve
the City=s
operation of its wastewater collection system.[7]  See Tex. Civ. Prac. & Rem. Code
Ann. '
101.0215(a)(6), (32).  Thus, these claims
involve a governmental function and must fall within a statute that waives the
City=s
immunity.  See id.; Tooke,
197 S.W.3d at 343.








              C.  Invocation of Trial Court=s Subject Matter
Jurisdiction

             over
Negligence Claims for Use of Motor-Driven Equipment

 

The McDonalds relied in part on
the TTCA=s
use-of-motor-driven-equipment exception to support their negligence
claims.  The McDonalds alleged that the
lift station pumps were Amotor-driven equipment,@ that
the City negligently used these pumps by operating them over capacity and
without a mechanical bar screen, and that this use produced harmful H2S
emissions, which caused property damage and personal injury to the
McDonalds.  The City contends that the
McDonalds=s claims involve the City=s
non-use of the mechanical bar screen, which does not satisfy the Ause-of-property@ requirement
of the TTCA, and that the McDonalds have not pleaded or provided evidence of a
causal link between the operation of the motor-driven equipment and their
damages.[8]








                                  1.
Motor-Driven Equipment

Stationary electric motor-driven pumps fall
within the meaning of Amotor‑driven equipment@ for
purposes of the TTCA.  See, e.g., Tex.
Natural Res. Conservation Comm=n v.
White, 46 S.W.3d 864, 868 (Tex. 2001) (A>Motor‑driven= means,
quite simply, driven by a motor.  The
pump in this case was an implement used for the purpose of dissipating
fumes.  It was drivenCor made
to perform its taskCby a motor.  It therefore fits the general definition of >motor‑driven
equipment.=@); Floyd,
150 S.W.3d at 228 (AThe lift station=s pumps
are motor driven, and thus fall within the generic definition of the Code.@); 4
DG=s Corp. v. City of Lockney, 853
S.W.2d 855, 857 (Tex. App.CAmarillo
1993, no writ) (holding that sewage pumps that were A>energized
by motors, and . . . used in the city=s
operation of its sanitary sewer system=@ were
motor‑driven equipment under the TTCA).

The McDonalds=s
pleadings and the evidence in the record demonstrate that the lift station uses
motor-driven pumps to pump raw sewage uphill. 
Thus, we hold that the McDonalds established that the pumps in question
were motor-driven equipment within the scope of section 101.021(1).  See White, 46 S.W.3d at 868B69; Floyd,
150 S.W.3d at 228.








                                       2.  Use or Non-use

In the context of a waiver of immunity under
section 101.021(1) of the TTCA, the term A>use= means >to put
or bring into action or service; to employ for or apply to a given purpose.=A  White, 46 S.W.3d at 869; 4 DG=s Corp., 853
S.W.2d at 857.  The use of the equipment
must have actually caused the injury for the waiver in section 101.021(1) to
apply.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 101.021(1)(a); White, 46
S.W.3d at 869.

Here, the City contends that the McDonalds
alleged only that the City failed to use the mechanical bar screen and that
this non-use does not fall within the TTCA=s waiver
of immunity.  To invoke the TTCA=s waiver
of immunity, the McDonalds=s
pleadings and evidence in the record must have raised at least a fact issue
regarding whether the City=s actual
use of the pumpsCrather than non-use of the
mechanical bar screenChas caused their injuries and
property damage.  See Miranda, 133
S.W.3d at 228; White, 46 S.W.3d at 869 
(citing Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 584B85 (Tex.
1996)).








The McDonalds did allege more than mere non-use
of the mechanical bar screen.  See
White, 46 S.W.3d at 869; see also Miranda, 133 S.W.3d at 228
(requiring a liberal construction of the allegations in the petition).  Their petition specifically alleged that (1)
the lift station=s Amotor[-]driven
equipment has not been properly serviced, maintained and/or operated and has
been negligently used over the time periods relevant to the claims made in this
suit,@ (2) the
City has had Aactual knowledge that the lift
station has been operating outside of its operational limits and capacities for
some time due to the condition and age of its existing motor driven pumps but
the City still continues its intentional, negligent and harmful operation of
this motor[-]driven equipment,@ and (3)
A[b]ecause
the lift station is operating beyond its designed and intended capacity, the
lift station is emitting illegal and harmful levels of H2S and
likely other toxic fumes and substances.@

Additionally, the evidence submitted by the
McDonaldsCspecifically, the TCEQ report
and the Preliminary ReportCalso
established that one or both of the operable pumps did not meet TCEQ design
standards and that even after the TCEQ recommended immediate action be taken to
reduce H2S levels, the City continued using the same pumps at the
lift station.  Viewing the pleadings and
evidence in the light most favorable to the McDonalds, we hold that the
pleadings and evidence established Ause@ of
motor-driven equipment sufficient to fall within the TTCA=s waiver
of immunity.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 101.021(1); White,
46 S.W.3d at 869.








                                       3.  Proximate Cause

In addition to the Ause@
requirement, the TTCA requires that the plaintiffs=s
injuries be Aproximately caused@ by the
operation or use of the motor-driven equipment. 
See Tex. Civ. Prac. & Rem. Code Ann. '
101.021(1).  Proximate cause consists of
cause‑in‑fact and foreseeability. 
W. Invs., Inc. v. Urena, 162 S.W.3d 547, 551 (Tex. 2005); Brittain,
268 S.W.3d at 807.  To establish cause‑in‑fact,
or Abut for@ causation,
a party must show that the defendant=s
negligence was a substantial factor in bringing about the party=s injury
without which no harm would have been incurred. 
Ford Motor Co. v. Ledesma, 242 S.W.3d 32, 45B46 (Tex.
2007); Excel Corp. v. Apodaca, 81 S.W.3d 817, 820 (Tex. 2002); Brittain,
268 S.W.3d at 807.








In this case, the McDonalds alleged that the Aoperation
and use of the lift station=s
underground motors in a manner which caused the lift station to emit toxic
fumes and illegal levels of hydrogen sulfide that are known to cause injury to
humans constitutes negligence.@  They further alleged that Mr. McDonald and
his minor son have experienced health problems and physical injuries as a
result of their exposure to H2S and that they were unable to continue
operating the Golf Center due to these emissions.  The TCEQ report provided as jurisdictional
evidence by the McDonalds also confirms that H2S emissions around
the lift station exceeded the statutory maximum and that these emissions were
capable of causing the symptoms complained of by Mr. McDonald.













Thus, after considering the McDonalds=s
pleadings and the relevant jurisdictional evidence, taking as true all evidence
favorable to the McDonalds and indulging every reasonable inference and
resolving all doubts in their favor, we hold that the pleadings and the
evidence sufficiently invoke a waiver of the City=s
governmental immunity regarding the McDonalds=s
negligence claims for use of motor-driven equipmentCspecifically,
the City=s
operation of the lift station with one motor-driven pump in excess of the
station=s
operating capacity.[9]  See Miranda, 133 S.W.3d at 227B28;
Bland, 34 S.W.3d at 555. 
Consequently, we hold that the trial court erred by granting the City=s plea
to the jurisdiction on these negligence claims. 
See Miranda, 133 S.W.3d at 226. 
We sustain that portion of the McDonalds=s first
and second issues challenging the trial court=s grant
of the City=s plea to the jurisdiction on
their negligence, gross negligence,[10]
and negligence per se[11]
claims to the extent that the McDonalds assert a waiver of governmental
immunity based on use of motor-driven equipment.  But to the extent that the McDonalds assert a
waiver of governmental immunity based on non-use of the mechanical bar screen,
we overrule their first and second issues. 
See Miranda, 133 S.W.3d at 228; White, 46 S.W.3d at 869.

              D.  Invocation of Trial Court=s Subject Matter
Jurisdiction

                                  over
Premises Defect Claim

 

The McDonalds also brought a premises defect
claim under the TTCA based on the Athe
malfunctioning and/or misused equipment at the lift station.@








A governmental unit=s
liability for a premises defect is implied under section 101.021(2) because a
premises defect arises from a condition existing on real property.  Perez v. City of Dallas, 180 S.W.3d
906, 910 (Tex. App.CDallas 2005, no pet.) (citing City
of Midland v. Sullivan, 33 S.W.3d 1, 6 (Tex. App.CEl Paso
2000, pet. dism=d w.o.j.), and Lamar Univ. v.
Doe, 971 S.W.2d 191, 195 (Tex. App.CBeaumont
1998, no pet.)); see Tex. Civ. Prac. & Rem. Code Ann. ' 101.021(2).  If the condition on real property giving rise
to the waiver of immunity is a premises defect, the governmental unit owes to
the claimant only the duty that a private person owes to a licensee on private property.  See State Dep=t of
Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex.
1992) (citing Tex. Civ. Prac. & Rem. Code Ann. '
101.022(a)).  However, if the claimant
pays for the use of the premises, the governmental entity owes the claimant the
duty owed to an invitee.  See Tex.
Civ. Prac. & Rem. Code Ann. '
101.022(a); Garcia v. State, 817 S.W.2d 741, 742 (Tex. App.CSan
Antonio 1991, writ denied).

A landlord generally owes no duty to tenants or
their invitees for dangerous conditions on the leased premises.  Johnson County Sheriff=s Posse,
Inc. v. Endsley, 926 S.W.2d 284, 285 (Tex. 1996); see Strunk
v. Belt Line Rd Realty Co.., 225 S.W.3d 91, 99 (Tex. App.CEl Paso
2005, no pet.).  However, if the landlord
retains possession or control of a portion of the leased premises, the landlord
has a duty of ordinary care in maintaining the retained portion.  Exxon Corp. v. Tidwell, 867 S.W.2d 19,
21 (Tex. 1993); Cadenhead v. Hatcher, 13 S.W.3d 861, 863 (Tex. App.CFort
Worth 2000, no pet.).  Thus, in a
premises liability lawsuit involving a landlord-tenant relationship, if the
tenant demonstrates that the landlord had possession or control of the premises
in question, then the landlord owed a duty to the tenant as an invitee.  See Parker v. Highland Park, Inc., 565
S.W.2d 512, 513B15 (Tex. 1978); see also
Palermo v. Bolivar Yacht Basin, Inc., 84 S.W.3d 746, 750 (Tex. App.CHouston
[1st Dist.] 2002, no pet.) (quoting Restatement (Second) of Torts Section 361
for proposition that lessor is liable for part of premises over which he
retains control or A>any
other part of the land the careful maintenance of which is essential to the
safe use of the . . . portion of land leased to the various lessees=@).








A plaintiff who is an invitee must establish that
(1) a condition of the premises posed an unreasonable risk of harm to the
plaintiff; (2) the owner knew or reasonably should have known of the defective
condition; (3) the owner failed to exercise ordinary care to protect the
invitee from danger; and (4) such failure was a proximate cause of injury to
the invitee.  Payne, 838 S.W.2d at
237.  In other words, the lessor is
liable for an injury caused by a premises defect if, by the exercise of
reasonable care, the lessor could have discovered the condition and its
unreasonable risk and then made the condition safe.  Shell Oil Co. v. Khan, 138 S.W.3d 288,
296 (Tex. 2004).  If the dangerous
condition is open and obvious, or otherwise known to the tenant, this does not
dispense with the lessor=s duty, but merely presents a
fact issue on proportionate responsibility. 
Wilson v. Braeburn Presbyterian Church, 244 S.W.3d 469, 471 (Tex.
App.CHouston
[14th Dist.] 2007, pet. filed) (citing Parker, 565 S.W.2d at 521).








In this case, the McDonalds alleged a premises
defect on property that they paid to useCthat is,
on property owned by the City and leased to the McDonalds.  Construing their pleadings liberally in their
favor, they allege that the City owed them the duty owed to an invitee.  See Tex. Civ. Prac. & Rem. Code
Ann. '
101.022(a); Miranda, 133 S.W.3d at 226, 228; see also Davies, 158
S.W.3d at 58 (holding that paying rent in consideration for occupancy
constitutes A[paying] for use of the premises@ within
the meaning of section 101.022(a)).  Thus,
the McDonalds were required to plead that the City breached the standard of
care owed to an invitee.

The McDonalds pleaded that the City owns and
operates the lift station that is located on the leased premises and that the
lift station was emitting harmful H2S gases, which posed an
unreasonable risk of harm about which the City had actual knowledge because it
owned, maintained, and operated the lift station and about which the City had a
duty to warn or eliminate.[12]  And the lease in the record provides that the
City was responsible for the maintenance and expenses of the area inside the
lift station fence and for the upkeep of the lift station itself.  The TCEQ report further shows that the City
had actual knowledge that the lift station was producing harmful gases that
were sufficient to cause the symptoms complained of by Mr. McDonald.[13]








The City contends that the McDonalds do not have
a viable cause of action for premises defect because Athe
alleged injury occurred off-site,@ rather
than on the lift station premises; in other words, the City argues that a
premises defect claim could exist only if the McDonalds=s
injuries occurred inside the fenced-in area of the lift station.  But the McDonalds=s
pleadings alleged, and the jurisdictional evidence established, that harmful
gases on the leased premises have caused injuries to the McDonalds and that the
City had the right to control that portion of the leased premises from which
those harmful gases emitted.  See
Parker, 565 S.W.2d at 513B15; Palermo,
84 S.W.3d at 750; see also Johnson County, 926 S.W.2d at 285 (holding
that a lessor remains liable for defects on portions of the premises that
remain under the lessor=s control).








After considering the McDonalds=s
pleadings and the jurisdictional evidence, taking as true all evidence
favorable to the McDonalds and indulging every reasonable inference and
resolving any doubts in their favor, we hold that the pleadings and
jurisdictional evidence establish that the McDonalds have asserted a claim for
premises defect sufficient to waive the City=s
governmental immunity.  See Payne,
838 S.W.2d at 237.  Accordingly, we hold
that the trial court erred by granting the City=s plea
to the jurisdiction concerning the McDonalds=s
premises defect claim.  See Miranda,
133 S.W.3d at 230.  We sustain that
portion of the McDonalds=s first and second issues
challenging the trial court=s grant
of the City=s plea to the jurisdiction on
their premises defect claim.

            E. No Invocation
of Trial Court=s Subject Matter
Jurisdiction

           over Negligence Claims
for Use of Tangible Personal Property

 

The McDonalds also relied on the TTCA=s
use-of-tangible-personal-property exception to support their negligence
claims.  They pleaded that Aduring
or about September and October 2006, and likely at other times,@ the
City=s
employees negligently used a meter device to test and monitor H2S
levels on the leased premises and at the lift station and that this use Acaused
Plaintiffs= damages.@  In an affidavit attached to the McDonalds=s
response to the City=s plea to the jurisdiction, Mr.
McDonald stated that on October 2, 2006, City employee Jason Fulco tested the H2S
levels at the lift station and explained to him that if the machine started to
flash, it meant that the H2S levels were not safe.  Mr. McDonald stated in his affidavit that the
testing device flashed in and around the lift station.[14]  The City contends that the McDonalds have
failed to establish that the use of the testing device caused the McDonalds=s
injuries.








The TTCA waives governmental immunity for Apersonal
injury . . . caused by a condition or use of tangible personal . . . property
if the governmental unit would, were it a private person, be liable to the
claimant according to Texas law.@  Tex. Civ. Prac. & Rem. Code Ann. '
101.021(2).  A plaintiff must allege that
usage of the personal property itself actually caused the injury; mere
involvement of the property is insufficient. 
Miller, 51 S.W.3d at 588; Bossley, 968 S.W.2d at 343; Renteria
v. Hous. Auth. of El Paso, 96 S.W.3d 454, 458 (Tex. App.CEl Paso
2002, pet. denied).

Here, the real substance of the McDonalds=s
complaint was that the City Afailed
to use the information derived from said testing to warn@ of
dangerous H2S levels.  But
this complaint is centered around the misuse or non-use of information, rather
than personal property, which does not fall within the TTCA=s
limited waiver of immunity.  See Univ.
of Tex. Med. Branch at Galveston v. York, 871 S.W.2d 175, 179 (Tex. 1994)
(noting that our case law Adoes not
permit claims against the State for misuse of information@); Kelso
v. Gonzales Healthcare Sys., 136 S.W.3d 377, 382 (Tex. App.CCorpus
Christi 2004, no pet.) (holding that pleading misuse of information revealed by
an EKG machine, rather than misuse of the EKG machine itself, did not waive
immunity under the TTCA).








Additionally, Mr. McDonald had already explained
his symptoms to the TCEQ and the TCEQ had already tested the H2S
levels at the lift station prior to Falco testing the levels.  Thus, the jurisdictional evidence establishes
that the City=s Ause of
tangible personal . . . property,@ i.e.,
the testing device, could not have proximately caused the McDonalds=s
injuries.  See Miller, 51 S.W.3d
at 588 (AUsing
that property must have actually caused the injury.@); Bossley,
968 S.W.2d at 343 (holding that doors may have Afurnish[ed]
the condition that makes the injury possible@ by
permitting patient to escape into community where he committed suicide, but Athe use
and condition of the doors were too attenuated from [the patient=s] death
to be said to have caused it@).








After considering the pleadings, taking as true
all evidence favorable to the McDonalds, and indulging every reasonable
inference and resolving any doubts in their favor, we hold that the McDonalds
have not alleged sufficient facts to establish a waiver of the City=s
immunity based on its use of tangible personal propertyCthe
testing device.  See Heinrich,
2009 WL 1165306, at *9; Miranda, 133 S.W.3d at 227B28; Bland,
34 S.W.3d at 555.  Consequently, we hold
that the trial court did not err by granting the City=s plea
to the jurisdiction on the McDonalds=s
negligence claim for use of tangible personal property, the testing
device.  We overrule the portion of the
McDonalds=s first and second issues
challenging the trial court=s ruling
granting the City=s plea to the jurisdiction on
this claim.

                                            V.  NUISANCE

The McDonalds also complain in their first issue
that the trial court erred by granting the City=s plea
to the jurisdiction on their nuisance claim.

Nuisance liability of a governmental entity
arises only when governmental immunity is clearly and unambiguously waived by
statute or when the nuisance rises to the level of a constitutional taking.  City of Dallas v. Jennings, 142 S.W.3d
310, 316 (Tex. 2004); City of Abilene v. Downs, 367 S.W.2d 153, 159
(Tex. 1963) (A[I]f the construction and
operation of the [sewage] plant results in a nuisance, such acts of the
municipality constitute a damaging or taking of property under Section 17 of
Article I of the Texas Constitution.@).

Article I, section 17 of the Texas Constitution
provides, ANo person=s property
shall be taken, damaged or destroyed for or applied to public use without
adequate compensation being made, unless by the consent of such person . . . .@  Tex. Const. art. I, '
17.  To establish a takings claim, the
plaintiff must show that (1) the governmental entity intentionally performed
certain acts, (2) that resulted in a Ataking@ of
property, (3) for public use.  Steele
v. City of Houston, 603 S.W.2d 786, 788B92 (Tex.
1980).








For purposes of article 1, section 17, a
governmental entity acts intentionally if it knows either that a specific act
is causing identifiable harm or knows that the harm is substantially certain to
result.  Tarrant Reg=l Water
Dist. v. Gragg, 151 S.W.3d 546, 555 (Tex. 2004); Jennings,
142 S.W.3d at 316.  Mere negligence that
eventually contributes to the destruction of property is not a taking.  City of Tyler v. Likes, 962 S.W.2d
489, 505 (Tex. 1997).  This requirement
is rooted in the constitutional provision that a compensable taking occurs Aonly if
property is damaged or appropriated for or applied to public use.@  City of San Antonio v. Pollock, No.
04-1118,  2009 WL 1165317, at *8 (Tex.
May 1, 2009) (quoting Gragg, 151 S.W.3d at 554B55,
which quotes Steele, 603 S.W.2d at 792). 
Moreover, the mere intentional operation of a sewer system is
insufficient to support liability.  City
of Arlington v. State Farm Lloyds, 145 S.W.3d 165, 168 (Tex. 2004) (citing Jennings,
142 S.W.3d at 314).








In the present case, the McDonalds=s
petition alleged that (1) the City owns and operates the lift station for a
public purpose of providing sewage management for its residents, (2) the City=s
operation of the lift station beyond capacity has emitted harmful H2S
and other toxic gases into the air on and around the premises leased to the
McDonalds, (3) these emissions have resulted in a dangerous condition that
substantially interfered with the McDonalds=s use
and enjoyment of their property, and (4) this interference rose to the level of
a constitutional taking.  The petition
further alleged that the City=s
conduct has caused the McDonalds to suffer physical injuries and economic
damages because they could not continue operating the Golf Center.

It is clear that the McDonalds=s
allegations include the elements of Ataking@[15] and Apublic
use.@  See Kerr v. Tex. Dep=t of
Transp., 45 S.W.3d 248, 250, 252 (Tex. App.CHouston
[1st Dist.] 2001, no pet.) (holding that trial court erroneously sustained plea
to jurisdiction because pleadings sufficiently alleged both nuisance and
constitutional taking).  In fact, the
parties=
arguments on appeal focus on the Aintent@
element.








Regarding Aintent,@ the
McDonalds alleged that the City knew or reasonably should have known that its
operation of the lift station beyond capacity and without a mechanical bar
screen would result in harmful emissions from the lift station.  The petition states, AAs a
result of the TCEQ testing, [the City] had actual knowledge that the lift
station was producing and emitting hazardous and illegal contaminants . . .
into the air on and around the leased premises and exposing the general public
to said hazardous conditions.@  Additionally, the City=s
Preliminary ReportCwhich was dated nearly nine
months after the TCEQ reportCsummarized
a February 2006 memorandum that recommended certain improvements to the lift
station to increase capacity and meet projected flows.[16]  The 2006 memorandum stated that the lift
station was operating at a capacity below its then-projected flows and
recommended as an Ainterim solution@ that
the City replace the damaged pumps with salvaged pumps for the time being so
that the lift station could Areturn
to compliance@ and increase capacity Ato meet
the projected flows.@ 
The Preliminary Report shows that the City had not implemented the Ainterim
solution@ as of
June 25, 2007, the date of the Preliminary Report.  More importantly, the report shows that the
City had not commenced making any of the recommended improvements to the lift
station as of June 25, 2007.[17]













Thus, the pleadings allege, and the
jurisdictional evidence demonstrates, that, at a minimum, the City knew as
early as September 2006Cbased on the TCEQ reportCthat the
operation of the lift station was emitting harmful H2S gases that
were sufficient to cause the McDonalds=s
injuries and property damage but that the City had not taken action to reduce
these emissions as of June 2007Cthe date
of the Preliminary Report.  Compare
City of Van Alstyne v. Young, 146 S.W.3d 846, 849 (Tex. App.CDallas
2004, no pet.) (AThe City=s
knowledge of alleged problems with the sewer pumps, however, is not the same as
knowledge that their decision not to replace the pumps would result in a flood
of the Young[=s] home.@) and
Pollock, 2009 WL 1165317, at *8B9
(rejecting plaintiffs= claim that City knew its
management of landfill was damaging their property or that damage was a
necessary consequence when evidence showed only that City monitored gas
generation and took steps to prevent damage), with Golden Harvest
Co., Inc. v. City of Dallas, 942 S.W.2d 682, 689B90 (Tex.
App.CTyler
1997, writ denied) (holding that plaintiff=s
summary judgment evidence raised genuine issues of material fact regarding
whether the city intentionally caused plaintiff=s land
to flood by failing to pre‑release water, thereby taking, damaging or
destroying plaintiff=s property); Bible Baptist
Church v. City of Cleburne, 848 S.W.2d 826, 830 (Tex. App.CWaco
1993, writ denied) (holding summary judgment improper when fact questions
existed about whether city failed to correct cause of sewer backup); Abbott
v. City of Kaufman, 717 S.W.2d 927, 932B33 (Tex.
App.CTyler
1986, writ dism=d) (holding, in reversing
summary judgment for city based on governmental immunity, that plaintiffs
properly alleged a taking or damaging of their property without compensation or
consent).

Consequently, applying a de novo standard of
review, we hold that the trial court erred by granting the City=s plea
to the jurisdiction on the McDonalds=s nuisance
claim.  See Miranda, 133 S.W.3d at
226.  We sustain the portion of the
McDonalds=s first and second issues
challenging the trial court=s ruling
sustaining the City=s plea to the jurisdiction on
their nuisance claim.

                              VI.  BREACH OF IMPLIED WARRANTIES

The McDonalds brought claims against the City for
breach of the implied warranties of habitability, fitness for a particular
purpose, and suitability for intended commercial purposes.








The first two of these warranties do not apply to
this case.  The implied warranty of
fitness for a particular purpose is created under the Texas Business and
Commerce Code and applies only to goods. 
See Tex. Bus. & Comm. Code Ann. ' 2.102,
2.315 (Vernon 2009).  The implied
warranty of habitability applies only to residential properties.  See Gym‑N‑I Playgrounds, Inc.
v. Snider, 158 S.W.3d 78, 86 (Tex. App.CAustin
2005) (AThe
implied warranty of suitability is an extension to commercial leases of the
implied warranty of habitability, which only applies to residential property.@), aff=d, 220
S.W.3d 905 (2007).  Because the McDonalds=s breach
of implied warranty claims involve a lease of real property for commercial
purposes, no warranty of fitness for a particular purpose or of habitability
exist as a matter of law under the facts of this case, and the trial court
properly granted the City=s plea to the jurisdiction on
these claims.








However, the McDonalds also brought a claim for
breach of the implied warranty of suitability for intended commercial purposes.[18]  This implied warranty means Athat at
the inception of the lease there are no latent defects in the facilities that
are vital to the use of the premises for their intended commercial purpose and
that these essential facilities will remain in a suitable condition.@  Davidow, 747 S.W.2d at 377.  This warranty only covers latent defects in
the nature of a physical or structural defect that the landlord has the duty to
repair.  Coleman v. Rotana, Inc.,
778 S.W.2d 867, 871 (Tex. App.CDallas
1989, writ denied).

A landlord may be liable for breach of the
implied warranty of suitability for intended commercial purposes if the
evidence shows that: (1) the landlord leased property to the tenant, (2) the
lease covered commercial property, (3) the leased property had a latent
physical or structural defect at the inception of the lease, (4) the defect was
in an area that was vital to the property for its intended commercial purpose,
(5) the defect made the property unsuitable for its intended commercial
purpose, and (6) the tenant suffered injury. 
7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc., 245
S.W.3d 488, 502 (Tex. App.CHouston
[14th Dist.] 2007, pets. denied) (citing Davidow, 747 S.W.2d at 377, and
Coleman, 778 S.W.2d at 871); see McGraw v. Brown Realty Co., 195
S.W.3d 271, 276 (Tex. App.CDallas
2006, no pet.).  A latent defect is one
not discoverable by a reasonably prudent inspection of the premises at the
inception of the lease.  See Gupta v.
Ritter Homes, Inc., 646 S.W.2d 168, 169 (Tex. 1983).








Here, the McDonalds=s
pleadings contain a single conclusory statement that the leased premises Ahad a
latent defect@ that made the property
unsuitable for its intended commercial purposes.  The McDonalds 
did not allege that the lift station was emitting harmful H2S
emissions when the lease commenced, that the defect was undiscoverable by a
reasonably prudent inspection at that time, or that the H2S emissions
rendered the leased premises unsuitable for their intended purposes.

Further, the jurisdictional evidence does not
lend support to the McDonalds=s
claim.  The TCEQ report, the Preliminary
Report, and the 2006 memorandum are evidence of the state of the lift station
and the emissions from the station in 2006 and 2007.  Mr. McDonald stated in his affidavit that
there were Aoccasionally strong odors that
emitted from the lift station@ during
the time that he operated the Golf Center and that Athe
odors became stronger and more frequent@ over
time, but this does not establish a latent defect in existence when he assumed
the lease.








After considering the McDonalds=s
pleadings and all relevant evidence, taking as true all evidence favorable to
the McDonalds and indulging every reasonable inference and resolving all doubts
in their favor, we hold that the pleadings and evidence do not establish a
cause of action for breach of the implied warranty of suitability for intended
commercial purposes.  See Heinrich,
2009 WL 1165306, at *9 (recognizing that if relevant evidence fails to raise a
fact question on the jurisdictional issue, the trial court rules on the plea as
a matter of law).  Accordingly, applying
the required de novo standard of review, we hold that the trial court correctly
granted the City=s plea to the jurisdiction on
the McDonalds=s breach of implied warranty
claims.  We overrule that portion of the
McDonalds=s first and second issues
challenging the trial court=s grant
of the City=s plea to the jurisdiction on
their breach of warranty claims.

                                  VII.  OPPORTUNITY TO AMEND

In their third and fourth issues, the McDonalds
argue that the City did not allege incurable defects in the McDonalds=s
pleadings to support its plea to the jurisdiction and that, consequently, the
trial court should have allowed the McDonalds to amend their petition to allege
facts constituting a waiver of immunity.








Ordinarily, when a plaintiff is capable of
remedying a jurisdictional defect in his pleading, dismissal with prejudice is
improper.  See Harris County v. Sykes,
136 S.W.3d 635, 639 (Tex. 2004). 
However, when a plaintiff has been provided a reasonable opportunity to
amend his pleading, but the amended pleading still does not allege facts that
would constitute a waiver of immunity, the court should dismiss the case with
prejudice.  Id.  This is so because the plaintiff should not
be permitted to relitigate jurisdiction once that issue has been finally
determined.  Id.

In the present case, the McDonalds amended their
petition three times prior to the trial court=s ruling
on the City=s plea to the jurisdiction.  At the time of the hearing on the City=s plea
to the jurisdiction, the McDonalds had twice amended their petition.  After the hearing and after the trial court=s oral
ruling granting the City=s plea in part and denying it in
part, the McDonalds filed a motion for reconsideration, and the trial court
held a hearing on that motion.  The
McDonalds subsequently filed two motions for leave to amend their pleadings and
later amended their petition a third time. 
This third amended petition was the live pleading on file when the trial
court entered its written order on the City=s
plea.  In the written order, the trial
court dismissed with prejudice the McDonalds=s claims
for nuisance, breach of warranty, negligence, gross negligence, negligence per
se, takings, and premises defect.








A review of the record demonstrates that not only
did the trial court afford the McDonalds a reasonable opportunity to amend
their petition, but the McDonalds amended their petition three times before the
trial court entered its written order on the City=s plea.[19]  See, e.g., City of Midlothian v.
Black, 271 S.W.3d 791, 800 (Tex. App.CWaco
2008, no pet.) (holding that trial court provided plaintiff with reasonable
opportunity to amend and that plaintiff=s
amended pleading still did not allege facts that would support plaintiff=s
claims); Lowell v. City of Baytown, 264 S.W.3d 31, 37 (Tex. App.CHouston
[1st Dist.] 2007, pet. filed) (holding dismissal with prejudice proper when
plaintiffs did not amend their petition after being provided a reasonable
opportunity to do so).

Thus, as a practical matter, the McDonalds have
already had an opportunity to re-plead; they are not entitled to another
opportunity to cure the jurisdictional defects detailed above.  See Brittain, 268 S.W.3d at 811
(refusing to allow plaintiff another opportunity to amend when her pleadings
did not affirmatively negate jurisdiction but when she had already had the
opportunity to re-plead).  To the extent
that we affirm the trial court=s ruling
granting the City=s plea to the jurisdiction, we
hold that the trial court did not err by dismissing those claims with
prejudice.  We overrule the McDonalds=s third
and fourth issues.

                                         VIII.  CONCLUSION








Having overruled in part and sustained in part
the McDonalds=s first and second issues and
having overruled the McDonalds=s
remaining issues, we affirm the trial court=s order
granting the City=s plea to the jurisdiction as to
the McDonalds=s claims for negligence alleging
use of tangible personal property (the testing device) and use of motor-driven
vehicles and for breach of warranty.  We
reverse the trial court=s order granting the City=s plea
to the jurisdiction as to the McDonalds=s claims
for negligence alleging use of motor-driven equipment, for premises defect, for
nuisance, and we remand those claims to the trial court for further
proceedings.  To the extent the McDonalds=s
pleadings attempt to state a claim based on any other waiver of governmental
immunity, we affirm the trial court=s order.

 

SUE
WALKER

JUSTICE

 

PANEL: CAYCE, C.J.;
LIVINGSTON and WALKER, JJ.

 

CAYCE, C.J. dissents and
concurs without opinion.

 

DELIVERED: June 25, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Civ. Prac. &
Rem. Code Ann. '' 101.001B.021, .023B.109 (Vernon 2005); ' 101.022 (Vernon Supp.
2008).





[3]See Tex. Const. art. I, ' 17.





[4]We rely on the pleadings
and the relevant jurisdictional evidence in the record to support our
holding.  Our holding today is limited to
our review of the record at this early stage of the proceedings.  The outcome of any summary judgment or any
other future proceedings may vary depending on the development of any
additional evidence.





[5]See 30 Tex. Admin. Code ' 112.31 (2008) (Tex.
Comm. Envtl. Quality, Allowable Emissions--Residential, Bus., or Commercial
Prop.) (prohibiting emissions of H2S over 0.08 ppm averaged over any
30‑minute period if the downwind concentration of H2S affects
property used for residential, business, or commercial purposes).





[6]The McDonalds appeal the
trial court=s order granting the City=s plea on all of these
causes of action except for their pure takings claim, which they specifically
do not appeal.  We utilize the term Apure takings@ to distinguish this
claim from the McDonalds=s
nuisance-rising-to-the-level-of-an-unconstitutional-taking claim.  These claims were pleaded separately and
ruled on by the trial court separately.





[7]On appeal, the McDonalds
also argue that they pleaded a separate negligence cause of action against the
City for damages sustained to the Golf Center=s grounds after City
employees drove City-owned trucks across the leased premises.  The McDonalds allege in their brief to this
court that they established a waiver of the City=s governmental immunity
for this negligence action pursuant to the use-of-motor-driven-vehicle
exception to the TTCA.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 101.021(1)(A).  But under the factual background section of
their third amended petition, the McDonalds pleaded only that Athe intentional driving
of large vehicles and City owned and operated back hoes over the Golf Center
grassed areas creat[ed] large deep muddy ruts on the property@ and alleged that this
caused damage to the Golf Center=s greens and sprinkler system.  But nowhere in the petition did they plead a
cause of action for negligence based on these factual allegations or plead that
the City waived its governmental immunity for these actions based on the TTCA=s
use-of-motor-driven-vehicle exception.  See
id.; Brown, 80 S.W.3d at 555. 
Thus, we overrule that portion of the McDonalds=s first issue challenging
the trial court=s order granting the City=s plea to the
jurisdiction on the McDonalds=s negligence claims to the extent that those
claims involve the City=s use of motor-driven
vehicles.





[8]The City also contends
that the McDonalds=s claims must fail
because they did not plead or provide evidence @that any employees would
be personally liable to them under Texas law.@  See Tex. Civ. Prac. & Rem. Code
Ann.' 101.021(1)(B); see
also DeWitt v. Harris County, 904 S.W.2d 650, 653 (Tex. 1995) (holding that
if governmental employee is protected from liability by official immunity, then
governmental unit is likewise immune from liability under section
101.021(1)).  But contrary to the City=s contention, the
McDonalds specifically alleged that their negligence claims involve Apersonal injury and
property damage caused by the negligent operation or use of motor-driven
equipment by Defendant=s employee(s), and the employee(s) would be
liable to Plaintiff under Texas law.@  Thus, we
hold that the McDonalds=s pleadings were
sufficient to allege that a City employee would be personally liable to them
under Texas law as required by section 101.021(1).  See Miranda, 133 S.W.3d at 226; Floyd,
150 S.W.3d at 228.





[9]The Preliminary Report
states that of the two operational submersible pumps, one was Aassumed to be offline to
meet the TCEQ requirements.@





[10]Regarding the McDonalds=s gross negligence claim,
gross negligence differs from ordinary negligence in that a grossly negligent
defendant must proceed with Aconscious indifference,@ and his conduct must Ainvolve an extreme degree
of risk.@  See Tex. Civ. Prac. & Rem. Code
Ann. ' 41.001(11) (Vernon
2008); Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex. 1998) (AEvidence of simple
negligence is not enough to prove either the objective or subjective elements
of gross negligence.@); Dyson v. Olin Corp.,
692 S.W.2d 456, 458 (Tex. 1985) (noting that gross negligence is established by
evidence of the actor=s mental state).  As we explain in greater detail below, the
McDonalds=s pleadings and
jurisdictional evidence establish that the City had actual knowledge that the
lift station was producing harmful gases that were sufficient to cause the
McDonalds=s injuries and that the
City continued to operate the lift station in its then-existing condition.  See infra, p. 23, 30B32.  Consequently, we hold that the McDonalds=s pleadings and the
relevant jurisdictional evidence indicated the required elevated mental state
for gross negligence sufficient to invoke a waiver of the City=s governmental immunity
for those claims.  See Ellender,
968 S.W.2d at 921; see also Cobb v. Tex. Dep=t of Criminal Justice, 965 S.W.2d 59, 63 (Tex.
App.CHouston [1st Dist.] 1998,
no pet.) (holding, in summary judgment case, that evidence that defendant knew
of hazard but did not think it was serious enough to fix it created fact issue
on gross negligence).





[11]The McDonalds based their
negligence per se claim on a provision of the Texas Administrative Code that
places limits on hydrogen sulfide emissions around property used for
residential, business, or commercial purposes. 
See 30 Tex. Admin. Code ' 112.31. 
The TCEQ report in the record established that the lift station produced
emissions in excess of this statutory amount. 
See id.  Here, the
McDonalds relied on the TTCA=s use-of-motor-driven-equipment exception as a
basis for the City=s waiver of immunity
regarding their negligence per se claim. 
See Guadalupe‑Blanco River Auth. v. Pitonyak, 84
S.W.3d 326, 344B45 (Tex. App.CCorpus Christi 2002, no
pet.) (requiring plaintiffs to plead basis for waiver of immunity as part their
negligence per se claim).  Because we
have held that the McDonalds invoked a waiver of the City=s governmental immunity
under the TTCA=s
use-of-motor-driven-equipment exception to, we also hold that this waiver
applies to their negligence per se claims.





[12]The McDonalds further
pleaded that they did not know of the dangerous condition until the TCEQ tested
the emissions around the lift station in September of 2006.  But whether or not they knew of the dangerous
condition is relevant only as to proportionate responsibility.  See Wilson, 244 S.W.3d at 471 (citing Parker,
565 S.W.2d at 521).  It does not
alleviate the City=s duty of reasonable
care.  See id.





[13]Mr. McDonald also stated
in his affidavit that City employee Dave Stallings told him that the lift
station was producing harmful H2S gases.





[14]In the City=s responses to
interrogatories, attached to the McDonalds=s response to the City=s plea, the City stated
that it Ahas not conducted tests
regarding the level of H2S@ at the lift station.





[15]Takings liability may be
premised on a leasehold interest such as the McDonalds=s.  See, e.g., City of Argyle v. Pierce,
258 S.W.3d 674, 684 n.8 (Tex. App.CFort Worth 2008, pet. dism=d) (AAn ownership interest in
a leasehold is the legal right to possess that property for a set period of
time.@) (citations omitted); Reeves
v. City of Dallas, 195 S.W.2d 575, 579B80 (Tex. Civ. App.CDallas 1946, writ ref=d n.r.e.) (allowing
lessee to be compensated for the value of the lease in inverse condemnation
proceeding).





[16]The record does not
include a copy of the 2006 memorandum, only the summary of the findings and
recommendations made therein, as detailed in the Preliminary Report.





[17]The Preliminary Report
also demonstrates that the metal cover placed over the hole where the
mechanical bar screen was removed was Aloosely placed over the access openings@ and Aseverely corroded@ from Atrapped odorous gases.@  The report shows that the City desired to
replace this section with a buried pipe section, which would Areduce odor and corrosive
gas emissions,@ but that no action had
been taken as of June 25, 2007.  Although
the Preliminary Report states only that the City Arecently@ removed the mechanical
bar screen, the McDonalds alleged that the City removed this screen on or about
October 2006.





[18]The City contends on
appeal that the McDonalds did not properly plead this implied warranty, but a
review of the McDonalds=s third amended petitionCthe live petition on file
when the trial court entered its order on the City=s plea to the
jurisdictionCshows otherwise.  The McDonalds specifically alleged that the
City leased to them commercial property with a latent defect, that the latent
defect Awas in an area that was
vital to the property=s commercial purpose,@ that this defect Amade the property
unsuitable for its intended commercial purpose,@ and that they suffered
an injury as a result.  See Davidow v.
Inwood N. Prof=l Group‑Phase I, 747 S.W.2d 373, 377
(Tex. 1988).





[19]Significantly, the
McDonalds have not identified on appeal any additional matters that they would
allege in an amended petition.