**Opinion issued March 12, 2026.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00381-CV

_____

**THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellant**

**V.**

**LISA BUSTOS , TONI SALGADO, AND LOUIS SICOLA, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF GLORIA ANN REESE, Appellees**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-53123**

---

## O P I N I O N

In this interlocutory appeal from the denial of a plea to jurisdiction, we are presented with a novel question. Are a state-employed doctor's hands alone considered "tangible personal property" for the purpose of waiving sovereign

immunity under the Texas Tort Claims Act (TTCA)? Because we answer that question "no," we reverse and render judgment dismissing the claims against the University of Texas Health Science Center at Houston (UTHSC-H).

## BACKGROUND

Gloria Ann Reese was admitted to TIRR Memorial Hermann Hospital for inpatient rehabilitation, physical therapy, and strengthening. Her attending physician was Dr. Nikola Dragojlovic, an employee of UTHSC-H. Upon admission, a urinalysis was performed. It showed large amounts of Klebsiella, a type of bacteria that causes lung infections and urinary-tract infections. During an almost three-week hospitalization, Reese was never treated for a bacterial infection. She was subsequently discharged by Dr. Maryam Ibrahim Sultan—also an employee of UTHSC-H.

The day after Reese was discharged, she was admitted to another hospital—Methodist Hospital in Baytown, Texas. There it was discovered that Reese was septic with a serious bacterial infection in both her lungs and urine. Reese was treated with antibiotics, but she died a month later. Her cause of death was listed as acute respiratory failure with hypoxia.

Reese's heirs filed suit against UTHSC-H. They alleged that Drs. Dragojlovic and Sultan were negligent for:

1. Failing to properly coordinate Reese's care;

2. Failing to order appropriate consults for Reese;

3. Failing to pay attention to lab results;

4. Failing to recognize the signs and symptoms of sepsis and pneumonia;

5. Failing to properly treat sepsis and pneumonia;

6. Failing to comply with safety protocols;

7. Failing to maintain the applicable standard of care;

8. Affirmatively creating medical conditions that required additional medical treatment and ultimately led to Reese's death;

9. Affirmatively creating medical conditions that cause severe emotional and psychological damage to the plaintiffs; and

10. Causing the Klebsiella infection through the use of poor sterilization techniques that were either unclean hands or instruments used in Reese's treatment.

They also alleged that Dr. Sultan negligently discharged Reese in a medically critical condition. But, as Reese's heirs stated to the trial court, the gravamen of their claims is that Drs. Dragojlovic and Sultan used unsanitary hands when treating Reese.

UTHSC-H filed a Plea to the Jurisdiction. It maintained that dismissal was required because the allegations against Drs. Dragojlovic and Sultan did not fall within the limited waiver of sovereign immunity found in the TTCA. UTHSC-H specifically asserted that (1) "the mere use of hands by an employee of the State cannot waive sovereign immunity as a matter of law"; (2) its doctors "did not use

3

any items of tangible personal property that could have transferred Klebiella" to Reese; and (3) the jurisdictional evidence "conclusively negates that Drs. Sultan and Dragojlovic used any instruments or objects that could have transferred Klebsiella" to Reese. UTHSC-H attached the affidavits of both Drs. Sultan and Dragojlovic to support its plea.

The heirs responded to the plea, but they did not provide any jurisdictional evidence and did not seek discovery to obtain such evidence. Instead, they broadly argued during the hearing on the plea that a doctor's hands alone, as used in a medical procedure or treatment, constitutes "the use of tangible personal property" under the TTCA for waiving sovereign immunity.

The trial court agreed and denied UTHSC-H's Plea to the Jurisdiction. This interlocutory appeal followed.

## STANDARD OF REVIEW

We review de novo a trial court's ruling on a jurisdictional plea. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A defendant may use a plea to the jurisdiction to challenge whether the plaintiff has met her burden of alleging jurisdictional facts or to challenge the existence of jurisdictional

4

facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we must consider any relevant evidence submitted by the parties to resolve the jurisdictional issues. *Miranda*, 133 S.W.3d at 227. In reviewing such a plea, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018); *Miranda*, 133 S.W.3d at 228. However, we cannot disregard evidence necessary to show context or evidence and inferences unfavorable to the nonmovant if reasonable jurors could not do so. *See Alamo Heights*, 544 S.W.3d at 771.

This standard mirrors our summary-judgment standard under Texas Rule of Civil Procedure 166a(c) and places the burden on the governmental unit, as the movant, to meet the standard of proof to support its contention that the trial court lacks subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 228; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

Once the governmental unit asserts and provides evidentiary support for its plea, the plaintiff is then required to show that a disputed fact issue exists on the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question on the jurisdictional issue, the trial court cannot grant the plea, and the

fact issue is for the fact finder to resolve. *See Alamo Heights*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 227–28.  If the evidence is *undisputed* or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228.

## PLEA TO THE JURISDICTION

Here, UTHSC-H argues that the trial court erred in denying its plea to the jurisdiction because "[h]uman hands are not tangible personal property under Texas law."  We agree.

### *Applicable Law*

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002); *see also Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 323–24 ("Sovereign immunity protects the State, its agencies, and its officials from lawsuits for damages.").  Although the terms "sovereign immunity" and "governmental immunity" are often used interchangeably, sovereign immunity "extends to various divisions of state government, including agencies, boards, hospitals, and universities," while governmental immunity "protects political subdivisions of the State, including counties, cities, and school districts." *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 323–24; *Univ. of Tex.*

6

*Health Sci. Cen. at Hous. v. McNeely*, No. 06-21-00041-CV, 2021 WL 4953238 at *1, (Tex. App.—Texarkana, pet. denied) (mem. op.) (nothing that "[i]t is undisputed that UTHSC is protected by sovereign immunity" unless that immunity is waived).

We interpret statutory waivers of sovereign immunity narrowly, as the Texas Legislature's intent to waive immunity must be clear and unambiguous. *See LMV-AL Ventures, LLC v. Tex. Dep't of Aging & Disability Servs.*, 520 S.W.3d 113, 120 (Tex. App.—Austin 2017, pet. denied); *see also* TEX. GOV'T CODE § 311.034. Without an express waiver of sovereign immunity or governmental immunity, courts do not have subject-matter jurisdiction over suits against the State or its political subdivisions. *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Miranda*, 133 S.W.3d at 224–25.

The TTCA provides a limited waiver of immunity for certain suits against governmental units. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109; *Garcia*, 253 S.W.3d at 655; *City of Houston v. Garza*, No. 01-18-01069-CV, 2019 WL 2932851, at *4 (Tex. App.—Houston [1st Dist.] July 9, 2019, no pet.) (mem. op.); *City of Dallas v. Hillis*, 308 S.W.3d 526, 530 (Tex. App.—Dallas Mar. 30, 2010, pet. denied). UTHSC-H is a governmental unit protected by sovereign immunity, absent waiver. *See* TEX. CIV. PRAC. & REM. CODE § 101.001(3); *see also McNeely*, 2021 WL 4953238 at *1. Relevant here, the TTCA waives a governmental unit's

7

immunity for a personal injury "caused by a condition or use of *tangible personal or real property* if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* Tex. Civ. Prac. & Rem. Code § 101.021(2) (emphasis added).

## *Analysis*

At the plea-to-the-jurisdiction hearing, Reese's heirs relied completely on their assertion that the hands of Reese's treating doctors were instruments and thus "tangible personal property" under the TTCA.[1] And again, in their briefing to us, they argue on appeal that "the clear argument can be made that a doctor uses his hands for the given purpose of diagnosing and treating a patient" and therefore the "unclean hands [of a doctor] constitutes the use of tangible personal property as defined by the Texas Tort Claim Act for the purposes of determining the applicability of sovereign immunity."

UTHSC-H argues that (1) the hands of a state employee are not "tangible personal property" within the meaning of the TTCA, and (2) even if human hands could be considered as such, the undisputed jurisdictional evidence in this case

---

[1] In their response to UTHSC-H's plea to the jurisdiction, plaintiffs stated, "Having read and review (sic) *McClain v. Univ. of Tex. Health Ctr. at Tyler*, 119 S.W.3d 4, 5 (Tex. App.—Tyler 2002, pet. denied) and Plaintiff's pleadings, Plaintiff will cede this argument to the defendant." "[T]he current interpretation of the case law with respect to the use of dirty instruments [cannot be met] and the plaintiff will yield this argument relying [instead] on unclean hands, an infection that can only be transmitted by person to person contact, the evidence of infection, and the admission of the doctors that they touched the patient to defeat sovereign immunity in this matter."

8

shows that Reese's treating physicians did not have infected hands when they treated Reese.

We address each argument in turn.

### 1. *Human Hands are not Tangible Personal Property*

According to Reese's heirs, "whether a doctor's use of unclean hands in the care and treatment of a patient constitutes the use of tangible personal property as defined by [the TTCA] is an issue of first impression before this court." We also are not aware of any Texas case that specifically addresses whether a doctor's hands are "tangible personal property" under the TTCA. But we are not without guidance in resolving this issue.

The Fort Worth Court Appeals has addressed a similar contention in *University of North Texas v. Harvey*[2]—a food-poisoning case involving students at a summer drill team camp. In *Harvey*, fifty-eight campers, including Harvey, were severely poisoned by *E. coli* bacteria at the UNT camp. *Id.* at 220. Harvey sued UNT alleging a variety of negligence and strict liability claims.

As pertinent here, Harvey alleged that UNT employees were negligent in the preparation of food at the camp by not washing their hands thoroughly after handling raw meats and then handling other foods. *Id*. at 224. The trial court denied UNT's plea to jurisdiction in its entirety. The court, however, reversed as

---

[2]     124 S.W.3d 216 (Tex. App.—Fort Worth 2003, pet. denied).

to the hand-washing claim and explained that—"negligently fail[ing] to adequately wash their hands does not allege a use or condition of tangible personal or real property." *Id.* at 225.

The Tyler Court of Appeals likewise rejected a similar contention in *McClain v. University of Texas Health Center.*[3] In that case, McClain developed a surgical-incision infection after undergoing heart surgery and had to be re-admitted. A nurse who participated in McClain's heart surgery "was [subsequently] tested and found to have on her hands a bacterium which was the same type as that involved in Mr. McClain's infection." *Id.* at 9. McClain sued the hospital and alleged, among other things, that his infection was caused by the hospital in negligently allowing the nurse—whose hands tested positive for the same bacterium as McClain—to work on him in the operating room. *Id.* at 8.

In affirming the trial court's ruling that sovereign immunity applied, the court addressed the claim regarding the nurse's hands and explained—"[e]ven assuming [the surgical nurse] was infected at the time of Mr. McClain's surgery, which is not shown by the record, she is not herself tangible personal or real property [under the TTCA]." *Id.* at 10.

---

[3] 119 S.W.3d 4, 9 (Tex. App.—Tyler 2002, pet. denied).

A few other Texas cases have addressed whether a human body can be considered "tangible personal property" under the TTCA—and they have reached the same conclusion.

For example, in *University of North Texas Health Center v. Gonzalez*, the heirs of Jose Gonzalez sued the hospital after Gonzalez died and the hospital returned the wrong body to the family for burial.[4] Gonzalez's heirs alleged that "human remains are property," and that the hospital misused Gonzalez's body by harvesting his organs and delivering the wrong body for burial. *Id.* at *8. The Fort Worth Court of Appeals disagreed, holding that harvesting body parts from the wrong body was a misuse of information, not a misuse of tangible property. *Id.* Implicit in the holding is that a human body is not property.

And in *Doe v. City of Fort Worth*[5], the plaintiff, a 15-year-old girl, was sexually assaulted by a worker at the City-owned animal shelter. *Id.* at 894-95. She sued, alleging that a key card she was given to enter the facility was a use or misuse of tangible property. *Id.* at 896. The Fort Worth Court of Appeals disagreed, holding that the key card was not a use of the keycard system. *Id.* at 902. The court further noted that the plaintiff's allegation was not that the key card caused her injury, but rather that it "allowed her to work with a dangerous human"

---

[4] No. 02-22-00310-CV, 2023 WL 2926263, *2 (Tex. App.—Fort Worth 2023, no pet.) (memo. op.).

[5] 646 S.W.3d 889 (Tex. App.—Fort Worth 2022, no pet.).

and that the City failed to protect her from that human. *Id.* In so holding, the court explained that "[a] human is not an item of tangible personal property that can be 'used' within the meaning of the TTCA." *Id.* at 903.

The Texas Supreme Court has also recognized that the human body is not "property" in the context of insurance. In *Evanston Insurance Company v. Legacy of Life, Inc[6].*, a policy issued to its insured, an organ donation charity, covered "loss of use of tangible property." *Id.* at 385. The supreme court considered whether the policy was triggered when the insured harvested a deceased woman's tissues and sold them for a profit. *Id.* at 379, 382–83. It acknowledged that tissues of dead bodies are "quasi property of the next of kin but they are not the property of the next of kin." *Id.* at 386. The supreme court then concluded that "loss of use of tangible property does not include the loss of use of the [deceased woman's] tissues." *Id.* at 387.

In so holding, the supreme court explained that "[u]nder the English common law, 'a dead body is not the subject of property[.]'" *Id.* at 383. This necessarily compels the following conclusion—If a dead body is not property, a fortiori, then a living human being also cannot be property under the law. *See* U.S. CONST. amend. XIII (prohibiting ownership of human beings); *see also, e.g., Khamsini v. State*, No. 01-24-00045-CR, 2025 WL 3236310, at *3 (Tex. App.—

---

[6]    370 S.W.3d 377 (Tex. 2012).

12

Houston [1st Dist.] Nov. 20, 2025, no pet.) (mem. op., not designated for publication) ("A wife is not a chattel."); *Robinson v. Univ. of Texas Med. Branch at Galveston*, 171 S.W.3d 365, 369 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding "use" of deceased's body to train medical students was not "use of tangible personal property" within meaning of TTCA).

Indeed, Reese's heirs cite no authority to the contrary or that supports their assertion here that a doctor's hands are "property" within the meaning of the TTCA. To hold as such would exponentially expand the limited waiver of sovereign immunity found in the TTCA. And it would mean that any time a doctor touches a patient, he or she would be automatically waiving sovereign immunity under the TTCA in every instance. This would conflict with the well-settled fact that the Legislature intended only for a limited, not complete, waiver of immunity in the TTCA. *See Dep't of Transp. v. Garza*, 70 S.W.3d 802, 807 (Tex. 2002) (citing *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341–42 (Tex. 1998) (examining the history of the TTCA's passage and concluding that "the waiver of immunity . . . is not, and was not intended to be, complete.")).

Accordingly, based on the state of Texas law, we conclude that a state-employed doctor's hands alone are not "tangible personal property" for the purpose

of waiving sovereign immunity under the TTCA. We therefore hold that the trial court erred in denying UTHSC-H's Plea to the Jurisdiction.

## 2. Uncontradicted Jurisdictional Evidence Shows No Infection

Even if a doctor's hands were "tangible personal property" under the TTCA, and they are not, we would still hold that no waiver of immunity has been shown under this record. The undisputed and uncontradicted jurisdictional evidence shows that Reese's treating doctors were not infected when they touched her, and that they followed customary hand-sanitizing protocols.

In support of its Plea to the Jurisdiction, UTHSC-H filed the affidavits of Reese's treating physicians at the hospital—Drs. Dragojlovic and Sultan. Dr. Dragojlovic's affidavit averred that:

> [I]t is my regular and customary practice before I walk into the room of any new patient, to sanitize my hands with hand sanitizer and to put medical gloves on my hands before physically examining a patient. Once my examination of the patient is complete, I remove my gloves and re-sanitize my hands with hand sanitizer when exiting a patient's room. It is also my regular and customary practice that, if I use a stethoscope to examine a patient, I put a glove on the stethoscope to create a barrier between the stethoscope and the patient. I employed these same procedures while examining and/or providing medical care to Ms. Reese at TIRR Memorial Hermann. Other than a stethoscope, I did not use any other instrument to examine Ms. Reese from which she could have received the Klebsiella bacteria that was discovered in the urinalysis.
>
> Further, I have never been hospitalized for pneumonia, nor have I ever had pneumonia or a urinary tract infection, for which Ms. Reese could not have received the Klebsiella bacteria from me that was discovered in the urinalysis. Had I transferred the Klebsiella bacterial to Ms.

14

Reese, I would also have had a cough and respiratory symptoms during the time that I oversaw her care, but I did not have any symptoms of illness or infections at those times.

Moreover, it was the height of the COVID-19 pandemic when Ms. Reese was admitted to TIRR Memorial Hermann. In addition to wearing a mask, Memorial Hermann required me to attest that I was symptom-free during the time that I cared for Ms. Reese. Otherwise, I would not have been permitted, nor would I have cared for, Ms. Reese had I exhibited any symptoms of illness or infection.

Dr. Sultan's affidavit similarly averred:

It is my regular and customary practice to always sanitize my hands with hand sanitizer before entering the room of any patient and to put medical gloves on my hands before physically examining a patient. I also re-sanitize my hands with hand sanitizer after removing my gloves following an examination of each patient. Ever since the beginning of the COVID pandemic, during which Ms. Reese was admitted to TIRR Memorial Hermann, it also became my regular and customary practice to sanitize my stethoscope with an alcohol wipe and to put a medical glove on the stethoscope to create a barrier between the stethoscope and the patient before examining a patient. I took these same precautions before each interaction with Ms. Reese, for which reasons I could not have transferred Klebsiella bacteria to Ms. Reese either through my hands or any instrumentation.

There was no other instrumentation, however, that I would have used when examining Ms. Reese. Therefore, I could not have transferred Klebsiella bacteria to her with any such instrumentation. Based on my knowledge and experience, to introduce bacteria into Ms. Reese's urethra would have required urethral catheterization or instrumentation during an intravaginal exam, but my examination of Ms. Reese upon discharge did not involve catheterization or a vaginal exam. I also had an N-95 mask properly secured on my face at the time I examined Ms. Reese for her discharge, as this was at the height of the COVID-19 pandemic.

Additionally, I was not ill with a bacterial infection or any other illness during the times that I examined Ms. Reese. The times I

15

examined Ms. Reese were at the same time as the COVID pandemic. As such, Memorial Hermann required me to attest that I had no symptoms of illness each day prior to reporting for work, otherwise I would not have been permitted to care for Ms. Reese nor would I have cared for her had I exhibited any symptoms of illness or infections.

These affidavits demonstrated that the doctors did not use any instruments other than covered, sanitized stethoscopes, that they followed routine hand-sanitation procedures when treating Reese, and that they, themselves, were not infected with the Klebsiella bacteria. Although Reese's heirs objected that the affidavits were improper because they went to the merits of the underlying cause of action, they did not obtain a ruling on their objection. And they did not file their own jurisdictional evidence or request the opportunity to conduct any jurisdictional discovery of their own.

Though the heirs complain about Chapter 74's limitations on discovery before the filing of expert reports, Chapter 74 and its discovery limitations are not applicable in the context of jurisdictional discovery. *See* TEX. R. CIV. P. 74.351(s) (imposing limitations on discovery in the context of expert reports).

Rather, "Texas courts routinely consider evidence when a plea to the jurisdiction challenges the existence of jurisdictional facts." *4 Families of Hobby, LLC v. City of Houston*, No. 24-0796, ___ S.W.3d ___, 2026 WL 70833, *2–3 (Tex. Jan. 9, 2026). "If the waiver of [sovereign] immunity is tethered to specific factual prerequisites, the only way to know if immunity has been waived is to

16

determine if the necessary facts exist." *Id.* (quoting *Tex. So. Univ. v. Young*, 682 S.W.3d 886, 887 (Tex. 2023) (Young, J., concurring in denial of petitions)). "The path to that destination often passes through jurisdictional discovery." *Id.*; *see, e.g.*, Tex. R. Civ. Proc. 120a (permitting continuance to conduct jurisdictional discovery when considering personal jurisdiction). Thus, trial courts should permit a reasonable opportunity for discovery when the government's plea to the jurisdiction challenges the existence of a jurisdictional fact. *Id.*

The heirs, however, did not request discovery to rebut the jurisdictional facts alleged in Drs. Dragojlovic's and Sultan's affidavits. The doctors' affidavits, therefore, shifted the burden to the heirs to show that a disputed fact issue existed on the jurisdictional issue, i.e., the doctors' use of infected hands. *Miranda*, 133 S.W.3d at 228. But the heirs did not do so. As a result, those affidavits established that the doctors did not use any instruments other than covered, sanitized stethoscopes, that they followed routine hand-sanitation procedures when treating Reese, and that they, themselves, were not infected with the Klebsiella bacteria.

Because UTHSC-H's jurisdictional evidence is *undisputed* and there is no fact question on the jurisdictional issue, the trial court should have granted UTHSC-H's plea to the jurisdiction for this further reason as a matter of law. *Miranda*, 133 S.W.3d at 228.

## CONCLUSION

For all the reasons above, we hold that the trial court erred in denying UTHSC-H's plea to the jurisdiction.  We thus reverse and render judgment dismissing this suit in all things against the UTHSC-H for lack of jurisdiction.


Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.